J L J Associates, Inc. *v.* Lucille Persiani et al.

Superior Court    Judicial District of    File No. D.N. CV87
Stamford/Norwalk at Stamford    0089730 S

Memorandum filed August 9, 1988

*Joseph L. Gerardi,* for the plaintiff.

*Peter Culhane* and *Sherriff & Sherriff,* for the defendants.

EMMETT, J. Before the court for decision is the defendants' motion to strike. The defendants claim that the plaintiff's action to enforce an option to purchase real property is barred by the rule against perpetuities.[1]

The defendants' motion challenges the legal sufficiency, on the face of the complaint, of the claims made. Practice Book § 152 (1); *King* v. *Board of Education,* 195 Conn. 90, 93, 486 A.2d 111 (1985). The court must construe the facts most favorably to the pleader, and "all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted." *Amodio* v. *Cunningham,* 182 Conn. 80, 82–83, 438 A.2d 6 (1980). The motion's purpose is to permit the court to avoid, where appropriate, a "useless trial." *Montanaro* v. *Pandolfini,* 148 Conn. 153, 156, 168 A.2d 550 (1961).

The plaintiff alleges that it holds a "right of first refusal" option to purchase property adjacent to its own, which option was created in 1978 when the plaintiff's predecessor in title bought its parcel from the defendants. The option reads: "It is expressly understood and agreed that the seller is the owner of a certain adjacent premises designated as Parcel 'B' 6,937 square feet as shown on record map #10035 in the Stamford Town Clerk's Office. As a further consideration for this contract and the buyer's acquisition of the property to be acquired pursuant hereto, it is expressly convenanted and agreed that the buyer shall

---

[1] Other grounds were stated in the defendants' motion but were not pressed at oral argument. The court, therefore, considers the additional grounds abandoned as reasons to grant the motion to strike, although not as potential defenses to the merits of the plaintiff's claim inasmuch as the court is not ruling on these issues at this time.

have a right of first refusal over said adjoining Parcel 'B' as follows: If the seller should at any time receive a bona fide offer for the purchase of said Parcel 'B,' [seller] shall so advise the buyer, in writing, setting forth the specific terms and conditions of said offer. The buyer shall have thirty (30) days from the date of said notice in which to exercise the right of first refusal and shall be entitled to acquire said Parcel 'B' on the same terms and conditions as are set forth in the above designated notice to the buyer from the seller setting forth said bona fide offer. If the buyer does not exercise said right within thirty (30) days, then this right shall terminate and the seller may convey said premises to such bona fide offeror. It is further agreed that this paragraph shall not be applicable to a conveyance between the sellers."

The defendants are correct in maintaining that the option poses a rule against perpetuities problems because the interest created "might not vest until some uncertain date in the future." *Neustadt* v. *Pearce,* 145 Conn. 403, 405, 143 A.2d 437 (1958). The legal consequences of this perpetuities problem, however, are unclear because both the present status of the rule and, in particular, the applicability of the rule to the facts in this case present questions in areas where the law is unsettled.

In 1955, the Connecticut legislature substituted a "second look" statute, General Statutes § 45-95, for the common law rule against perpetuities as the basis for evaluating the validity of future interests created in wills and inter vivos instruments. While the statute does not apply directly to the option at issue in this case, it does indicate a movement in this state's law toward analyzing "perpetuities" problems by review of the reasonableness of the restraint imposed at the time the interest vests rather than by invalidating such interests, as the rule against perpetuities provides, because

the possibility exists that the interest will not vest within a reasonable time. See *Connecticut Bank & Trust Co.* v. *Brody,* 174 Conn. 616, 628, 392 A.2d 445 (1978).

With respect to the specific question presented here—i.e., the effect of the rule against perpetuities on an option contract—the one Connecticut Supreme Court case that has analyzed the problem; *Lewis Oyster Co.* v. *West,* 93 Conn. 518, 533, 107 A.2d 138 (1919); hedged in its holding by finding both that the option, without regard to the facts surrounding its exercise, violated the rule and also that the option was, when exercised, "a very practical restraint on alienation." Specifically, the court in *Lewis Oyster Co.* v. *West,* supra, held: "This covenant attempts to create a contingent interest in property which may not vest within a life or lives in being and the lives of their immediate issue or descendants. It is also certain that the covenant amounts to a very practical restraint on alienation. It appears from this record that the property would have been worth $25,000 to the devisee West, if it could be sold freely. But because of this covenant she has been awarded only $2,500 plus improvements valued at $4,600. It is not consistent with the public policy of Connecticut as expressed in the rule against perpetuities and in the former statute against perpetuities, that the dead hand of West should rest on this property and control its price and its assignability for an unlimited future."

The ambiguity in the *Lewis Oyster Co.* decision—i.e., whether an open-ended option ought to be analyzed with reference to the circumstances existing when the option is exercised under the law governing unreasonable restraints or whether such an option ought to be judged solely "on its face" and without regard to the actual impact it has under the rule against perpetuities—has not been satisfactorily clarified since *Lewis Oyster Co.* was decided in 1919. In fact, in only

one case; *Neustadt* v. *Pearce,* supra; since *Lewis Oyster Co.* was decided has the Supreme Court applied the rule to an option contract[2] and, in so doing, the court assumed that the *Lewis Oyster Co.* court's consideration of the actual effect of the option was mere surplusage and concluded, without discussing the ambiguity in *Lewis Oyster Co.,* that an unlimited option must be automatically invalidated under the rule and not judged against the reasonableness of the restraint. In *Neustadt,* however, the court ignored several important principles of interpretation that apply to the evaluation of a rule against perpetuities problems—most notably that the court must, if possible and reasonable to do so, avoid using the rule to invalidate the parties' intentions. *Second National Bank* v. *Townsend,* 130 Conn. 631, 639, 36 A.2d 744 (1944).

In *Cohen* v. *Meola,* 37 Conn. Sup. 27, 32–33, 492 A.2d 152 (1980), adopted by the Supreme Court in *Cohen* v. *Meola,* 184 Conn. 218, 221, 439 A.2d 966 (1981), the court recently reiterated the principles of interpretation that disfavor application of the rule against perpetuities, stating: "The defendants' claim that the first right of refusal violates the rule against perpetuities is without merit. The defendants have the burden of proof on this first special defense . . . . Like any other contract, the right of first refusal clause must be interpreted in light of all the facts and circumstances

---

[2] The court has, in addition, on one more recent occasion considered the related, but different question of the validity of a right of first refusal option in a lease under the rule against perpetuities. *Cohen* v. *Meola,* 184 Conn. 218, 493 A.2d 966 (1981) (adopting the decision of the trial court, *Borden, J.* in *Cohen* v. *Meola,* 37 Conn. Sup. 27, 492 A.2d 152 [1980]). In *Cohen* v. *Meola,* supra, 37 Conn. Sup. 32, the court found no perpetuities violation, holding that the option was intended to last only for the lease period. Although not discussed by the *Cohen* court, it is generally accepted that options that are contained in leases are exempt from the rule against perpetuities because such options (unlike most other unlimited future restraints) encourage improvement of encumbered property. See 4 Restatement, Property § 395 (1944).

surrounding it. *Klein* v. *Chatfield,* 166 Conn. 76, 80, 347 A.2d 58 (1974). It is clear that the parties intended it to apply only for the lease period. . . . Furthermore, the clause was drafted by the defendants' agent and must, therefore, be construed against them. *Southern New England Contracting Co.* v. *State,* 165 Conn. 644, 656, 345 A.2d 550 (1974). *Finally, language fairly construable to avoid a perpetuities violation should be so construed. Bankers Trust Co.* v. *Pearson,* 140 Conn. 332, 355, 99 A.2d 224 (1953). . . . Under these circumstances the right of first refusal did not violate the rule against perpetuities." (Citation omitted; emphasis added.) *Cohen* v. *Meola,* supra, 37 Conn. Sup. 32–33.

Connecticut's enactment of the second-look statute; General Statutes § 45-95; as well as its adoption of common law rules of interpretation that discourage application of the rule against perpetuities both reflect a weakening of the rule's impact and, in this court's view, indicate that Connecticut's current common law analysis of the validity of an option contract under the rule requires the trier to evaluate the actual effect of the restraint imposed, rather than to jettison an option that "on its face" violates the rule. While the Connecticut appellate courts have not yet so held, there has not been a case within the last thirty years that has presented this issue for decision in Connecticut. Elsewhere, both commentators and courts that have considered the application of the rule to right of first refusal options have concluded that the rule ought not to be applied at least to such contracts. See, e.g., *Metropolitan Transportation Authority* v. *Bruken Realty Corporation,* 67 N.Y.2d 156, 492 N.E.2d 379, 67 N.Y.S.2d 306 (1986); J. Dukeminier, "A Modern Guide to Perpetuities," 74 Cal. L. Rev. 1867, 1908–1909 (1986).

As Dukeminier observes: "An option to purchase land, which is specifically enforceable in equity, creates in the optionee an equitable interest in land. Because an

option tends to reduce the incentive of the owner of land to improve it so long as the option exists, courts have subjected the option to the Rule against Perpetuities. In several jurisdictions a preemptive option (or right of first refusal), giving the optionee the right to buy if the optionor decides to sell, also has been held to come within the Rule. The modern trend, however, has been to free preemptive options from the Rule and to subject them instead to the rule against unreasonable restraints on alienation. The latter rule offers a more flexible tool for dealing with the wide variety of preemptive options encountered today.

"Under the traditional application of the Rule against Perpetuities, an option to purchase is treated like a future interest, contingent upon exercise of the option. If an option can be exercised beyond the perpetuities period, the option is void *ab initio*. . . .

"Subjecting options to the Rule against Perpetuities has been sharply criticized. Applying the Rule to options permits optionors to escape bad bargains when the land value rises by claiming a Rule violation, and subjects lawyers who draft options to malpractice claims if they do not limit the option's exercise to the perpetuities period. Because options are commercial transactions, they seldom endure, or are intended to endure, for many years. Options reasonably limited in time pose no threat to the public welfare; in fact, they are useful in facilitating the development of land. No good reason appears why a court should not save an unlimited option to purchase by holding that the parties intended the option to be exercised within a reasonable time, which is necessarily less than twenty-one years." J. Dukeminier, supra.

Similarly in *Metropolitan Transportation Authority* v. *Bruken Realty Corporation,* supra, the New York Court of Appeals recently held that the common law rule against unreasonable restraints, rather than the

rule against perpetuities, applies to an option contract similar to that at issue herein (i.e., a preemptive right to buy or right of first refusal, as contrasted with an option that compels the owner to sell upon the optionee's demand regardless of whether the owner wishes to sell). The *Metropolitan* court reasoned as follows: "The right acquired by [the plaintiff], though called an option by the parties, was a preemptive right to buy the freight yard property. An option grants to the holder the power to compel the owner of property to sell it whether the owner is willing to part with ownership or not. A preemptive right, or right of first refusal, does not give its holder the power to compel an unwilling owner to sell; it merely requires the owner, when and if he decides to sell, to offer the property first to the party holding the preemptive right so that he may meet a third-party offer to buy the property at some other price set by a previously stipulated method (see, . . . 5A Powell, Real Property ¶ 771 [1], at 72–68). Once the owner decides to sell the property, the holder of the preemptive right may choose to buy it or not, but the choice exists only after he receives an offer from the owner. If the holder decides not to buy, then the owner may sell to anyone (see generally, 6 American Law of Property § 26.64, at 507 [Casner ed 1952]; 1A Corbin, Contracts § 261; Ann., 40 ALR3d 920, 924). . . .

"We turn then to whether the rule against remote vesting applies to preemptive rights. . . .

"The courts which have declined to apply the rule have tried to distinguish preemptive rights from other interests in property by determining either (1) that the holder of a preemptive right has an interest which vests immediately, not remotely . . . or (2) that the holder acquires only a contract right exercisable at some future date, not an interest in property . . . . Commentators, and this court as well . . . have criticized both analyses as contrary to established principles of law and have

urged that the courts might better concede that although preemptive rights offend the basic policy of the rule against remote vesting, the offense is properly offset by their utility in modern legal transactions and that usefulness justifies excepting them from the operation of the rule (see, 5A Powell, op. cit. ¶ 771 [1], at 72-68, 72-70; Simes and Smith, Future Interests § 1154, at 64 [2d ed 1956]; Leach, Perpetuities: New Absurdity, Judicial and Statutory Correctives, 73 Harv L Rev 1318, 1320 [1960]).

"The courts have reached this conclusion in a number of circumstances involving options and preemptive rights, e.g., for options appurtenant to leases . . . or to mineral rights . . . or to franchise rights . . . or for options to expand an easement . . . or to acquire an interest in a party wall if the optionee decided to build adjacent to the optionor's land . . . . The holder's rights have been recognized because enforcement did not violate the underlying purposes of the rule against remote vesting. Quite the contrary, enforcement of the preemptive right in such cases encouraged the holder to develop the property by insuring his opportunity to benefit from development and to recapture his investment in it. For similar reasons recent decisions have held that, because the management of condominium developments has a valid interest not only in securing the occupancy of the units but also in protecting the ownership of the common areas and the underlying fee, its preemptive rights to repurchase units before sale to third parties should be excepted from the operation of the rule . . . see generally, Note, Condominiums and the Right of First Refusal, 48 St. John's L Rev 1146, 1149 [1974] et seq.). . . .

"Implicit in these decisions is a recognition that although preemptive rights unlimited in duration violate the rule against remote vesting they do so only marginally and that the application of the rule, because

of its inflexibility, may operate to invalidate legitimate transactions. This is so particularly in commercial and governmental activities because neither 'lives in being' nor 'twenty one years' are periods which are relevant to business or governmental affairs. In such cases the need to insure free alienability is served more effectively if the validity of the preemptive right is assessed by applying the common-law rule prohibiting unreasonable restraints (see, Leach, Perpetuities in a Nutshell, 51 Harv L Rev, 638, 660–661 [1938]; Leach, op. cit., 73 Harv L Rev, at 1320; Berg, Long-Term Options and the Rule Against Perpetuities, 37 Cal L Rev 1, 21–22 [1949]; Simes and Smith, op cit. § 1154, at 64). . . .

"Under the rule prohibiting unreasonable restraints on alienation, the validity of the preemptive right rests on its reasonableness, judged by its duration, price and purpose. The duration of the restraint is not measured by the life of the preemptive right. The rule does not condemn restrictions on transfer, i.e., provisions which postpone sale during the option period: it condemns only the 'effective *prohibition* against transferability itself . . . .' " (Citations omitted; emphasis in original.) *Metropolitan Transportation Authority* v. *Bruken Realty Corporation,* supra, 163–67.

In sum, it is the court's conclusion that, if confronted with the question today, the Connecticut appellate courts would adopt the *Metropolitan* approach to analyzing the validity of a preemptive right/option contract and would apply the rule against unreasonable restraints; see *Lampson Lumber Co.* v. *Caporale,* 140 Conn. 679, 684, 102 A.2d 875 (1954); rather than the rule against perpetuities to determine whether such a future restraint ought to be enforced. Although not yet clearly held to be the law in Connecticut, use of the rule against unreasonable restraints to evaluate such contracts does not constitute a departure from precedent

inasmuch as the court in *Lewis Oyster Co.* v. *West,* supra, 533, itself recognized the validity of this approach.

In the case under consideration, the plaintiff holds a right of first refusal to purchase property adjacent to its own, which it is now seeking to exercise. This option was created when the plaintiff's predecessor in title bought the property the plaintiff now owns from the defendants, who then owned both the plaintiff's property and the adjacent lot to which the option applies. The option may only be exercised within thirty days after the defendants receive a bona fide offer to purchase, and then only on the terms and conditions (including price) set forth in that offer. Presumably the plaintiff as well as its predecessors in title were encouraged to develop their lot by virtue of the fact that they held an option to purchase the adjacent property. Likewise, the defendants presumably were not discouraged from developing their property by the existence of the right of first refusal option, which only minimally restricts the free transferability of title to the property. The defendants are free under the option to transfer title among themselves and are only subject to exercise of the option at such time as they choose to sell the property. And finally, the nine year period elapsing between creation of the option and its exercise does not on the papers, at least, appear unreasonable.

Both the current state of the applicable law, which, although in flux, appears to reject application of the rule against perpetuities to right of first refusal option contracts in favor of using the rule against unreasonable restraints, and the specific circumstances alleged in this case, which indicate that the option the plaintiff seeks to enforce is not an unreasonable restraint, lead the court to conclude that the defendants' motion to strike must be denied. At the very least, it is the

court's opinion that the rule against perpetuities defense which the defendants raise ought to be evaluated on a full factual record, which will allow the court to judge whether the reasonableness of the restraint imposed, rather than the purported perpetuities violation, ought to control the plaintiff's ability to exercise its right of first refusal.

Accordingly, the defendants' motion to strike is denied.