DONALD E. HARE *v.* JOHN MCCLELLAN, JR., ET AL.
(15176)

PETERS, C. J., and CALLAHAN, BERDON, PALMER and HEIMAN, JS.

---

Argued May 30—decision released August 1, 1995

*John R. FitzGerald*, for the appellant (plaintiff).

*John D. Boland*, for the appellees (defendants).

BERDON, J. In this case involving the validity of a right of first refusal contained in a deed to real property, the dispositive issue is whether the trial court properly rendered summary judgment for the defendants on all issues. The plaintiff, Donald E. Hare, owns certain real property in the town of Woodstock. The defendants John McClellan, Anthony B. McClellan and Faith McClellan LeBaron (McClellans) conveyed a parcel of neighboring real property to the defendant Laura Ann Curley. The plaintiff, claiming that he had a valid right of first refusal on the parcel conveyed, brought this action seeking monetary damages from the McClellans and a mandatory injunction that would require Curley to convey the parcel to him in exchange for $45,000. The defendants, in a counterclaim, sought a judgment declaring the plaintiff's alleged right of first refusal invalid. The defendants moved for summary judgment on the plaintiff's complaint and on the counterclaim, and the trial court granted the motion, rendering judgment for the defendants.[1] We reverse the judgment of the trial court.

The underlying facts are undisputed. Margaret T. Tourtellotte, the mother of the McClellans, owned a large parcel of real property in the town of Woodstock. A discontinued highway known as the Old Connecticut Path ran in a southwesterly direction through the property. In 1973, Tourtellotte sold a portion of the

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

property on the southerly side of the discontinued road to the plaintiff for $35,000. In the deed, which was properly recorded in the Woodstock land records, Tourtellotte stated that she intended to include in the conveyance a right of way over the discontinued road, but "to the extent and only to the extent that the grantor has a sufficient legal interest in and to said road to grant this right of way. The grantor expressly disclaims any warranties with reference to this road otherwise contained in the Warranty Deed."

The deed from Tourtellotte to the plaintiff also included the following provision: "In the event that the Seller offers for sale land *contiguous* to the within described premises, with exceptions and qualifications as hereinafter noted, the Buyer shall have an option to purchase same for the asking price and for a period not to exceed thirty days after written notice has been mailed by the Seller to the Buyer at the Buyer's last known address. Failure to exercise this option within the said 30 day period shall render this option null and void, and of no effect. . . . *For purposes of this paragraph the 'discontinued highway' on the above map shall be deemed to be contiguous land of the Seller.*" (Emphasis added.)

Sometime after she conveyed this property on the southerly side of the road to the plaintiff, Tourtellotte subdivided her remaining property on the northerly side of the road into three separate parcels. In January 1990, Tourtellotte informed the plaintiff of her intention to sell one of the three parcels. The plaintiff subsequently executed a release of any right or claim he might have had in that parcel by reason of his right of first refusal. In September, 1992, Tourtellotte's attorney informed the plaintiff that the second parcel was to be sold, and stated in a letter that "[u]nder the terms of the right of first refusal, you have a right to elect [to purchase] the property at the same price as offered

by the prospective purchasers . . . . As you know, you do have thirty days in which to exercise your right of first refusal and purchase the property." The plaintiff decided to purchase this parcel. The third parcel of the subdivision is the parcel at issue in this case. On June 7, 1993, the McClellans, who had acquired their mother's interest in the third remaining parcel,[2] sold that parcel to Curley for $45,000. The McClellans did not provide notice of the proposed sale to the plaintiff, nor did they offer him the opportunity to purchase the third parcel.

The plaintiff subsequently brought this action to enforce his "right of first refusal," seeking monetary damages from the McClellans and a mandatory injunction to require Curley to convey the property to him in exchange for $45,000, the price that she had paid for the parcel. The defendants filed an answer and a counterclaim, which alleged that the parcel sold to Curley was not subject to the right of first refusal because that parcel was not "contiguous" to the plaintiff's property. The defendants further sought to have the plaintiff's interest in the parcel declared invalid because, among other reasons, it constituted an unreasonable restraint on alienation or was violative of the statutory rule against perpetuities. See General Statutes § 45a-490 et seq.[3]

The defendants moved for summary judgment on all counts of the complaint and on the counterclaim. The plaintiff filed two affidavits in opposition to the defendants' motion. In the first, the plaintiff recounted the history of the conveyances set forth above. He also

---

[2] The record does not indicate how the defendants came to own their mother's property.

[3] The defendants also claimed that the plaintiff's right of first refusal was invalid because it did not satisfy the statute of frauds and because the plaintiff was guilty of laches or had waived his right to the parcel. Because these issues are not before us, we do not address them.

stated in the affidavit that the right of first refusal contained in the 1973 deed, along with the language indicating that the discontinued highway was to be deemed "contiguous," was inserted into the sales contract in order "to join the land northerly of the discontinued highway with the discontinued highway and assure that it would be treated as contiguous and subject to my right of first refusal." In the second affidavit, George H. Jackson, the plaintiff's attorney at the time of the 1973 conveyance, stated that the intention of the deed's language was to give the plaintiff a right of first refusal in "all the land northerly of the parcel that he was purchasing, as well as that southerly and easterly of the subject property."

In an oral decision, the trial court rendered summary judgment on all issues in favor of the defendants. The court based its decision on two independent grounds. First, the court concluded that the right of first refusal was an unreasonable restraint on alienation, and was therefore invalid.[4] Second, the court determined that, in any case, the Curley parcel was not subject to the plaintiff's right of first refusal because it was not "contiguous" to the plaintiff's property. On appeal, the plaintiff claims that the trial court's ruling was improper in both respects. We agree with the plaintiff.

We begin our analysis by reiterating the standard of review of a trial court's decision to grant a motion for summary judgment. "Practice Book § 384 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the

---

[4] The trial court dismissed the defendants' contention that the right of first refusal was subject to the statutory rule against perpetuities. See footnote 5.

light most favorable to the nonmoving party. *Suarez v. Dickmont Plastics Corp.*, 229 Conn. 99, 106, 639 A.2d 507 (1994). Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact; *D.H.R. Construction Co. v. Donnelly*, 180 Conn. 430, 434, 429 A.2d 908 (1980); a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Internal quotation marks omitted.) *Water & Way Properties v. Colt's Mfg. Co.*, 230 Conn. 660, 664, 646 A.2d 143 (1994).

With that standard in mind, we turn to the specific claims of the plaintiff.

I

We initially consider whether the trial court was correct in granting the motion for summary judgment on the ground that the right of first refusal was a restraint on alienation that was unreasonable.[5] The transcript

---

[5] We note that the parties have not challenged the trial court's preliminary determination that a right of first refusal is subject to analysis only as a restraint on alienation, and not as a future interest subject to the statutory rule against perpetuities. See footnote 4. The parties, apparently assuming that the trial court's frame of analysis was correct, dispute only whether the precise type of right in this case was a "reasonable" or "unreasonable" restraint on alienation. We have never considered the issue of whether a right of first refusal to purchase real property is subject to analysis as a restraint on alienation or as a future interest subject to the perpetuities rule. The issue has, however, been litigated in the trial court; see, e.g., *J L J Associates, Inc. v. Persiani*, 41 Conn. Sup. 79, 550 A.2d 650 (1988); and is addressed in the Restatement (Second) of Property. See 1 Restatement (Second), Property, Donative Transfers § 4.4 (1983) (providing for analysis as a restraint on alienation), and comment (c) ("[i]f the right of first refusal given by a preemptive provision is specifically enforceable in equity, the provision creates a non-vested property interest that is subject to the rule against perpetuities"); see also id., reporter's note 2 ("[p]reemptive provisions giving the optionee a right of first refusal at the best price the optionor is willing to accept or at the fair market value of the property impose no restraint on alienation and have therefore been held valid in the

of the court's oral ruling reveals that the court apparently based its determination of unreasonableness on two interconnected grounds. Initially, the court determined that "there is no termination date for the right of first refusal." The court held, therefore, that the right "amounts to an unreasonable restraint on alienation due to its unlimited duration." As further support for its conclusion of unreasonableness, however, the court also looked to the amount of time that the right had been in existence. Finding that the deed from Tourtellotte to the plaintiff had been executed twenty-one years earlier in 1973, the court determined that the existence of the right for this period constituted "an unreasonable period of time." The court, therefore, concluded that the right was invalid as an unreasonable restraint on alienation. We disagree with the trial court's analysis of this issue.

A right of first refusal is known more technically as a preemptive option, as a right of preemption, or simply as a preemption.[6] "A right of pre-emption is a right to buy before or ahead of others; thus, a pre-emptive right contract is an agreement containing all the essential elements of a contract, the provisions of which give to the prospective purchaser the right to buy upon

---

majority of cases"). Although these provisions are contained in the edition of the Restatement (Second) of Property that relates to donative transfers, and not to commercial transactions, the introductory note to these provisions indicates that they are equally applicable to nondonative transfers. See id., p. 144; see also *Lewis Oyster Co.* v. *West*, 93 Conn. 518, 530–33, 107 A. 138 (1919) (conducting perpetuities analysis on right of first refusal in commercial transaction).

Nevertheless, because the parties to this litigation have not raised these issues before us, we do not consider them. We confine our analysis, therefore, only to the issue of whether the right of first refusal contained in the Tourtellotte deed to the plaintiff is "reasonable."

[6] "Terminology in cases involving pre-emptive rights has been somewhat loose and therefore subject to criticism. Although there is a distinct difference between a pre-emption and an option, courts often refer to pre-emptions as options." Annot., 40 A.L.R.3d 920, 927-28 (1971). For consistency, we refer to the interest at issue in this case as a preemptive option.

specified terms, but, and this is the important point, only if the seller decides to sell. It does not give the pre-emptioner the power to compel an unwilling owner to sell, and therefore is distinguishable from an ordinary option." Annot., 40 A.L.R.3d 920, 924 (1971).

Whether a preemptive option is reasonable or unreasonable is a question of law for the court. Cf. *Robert S. Weiss & Associates, Inc.* v. *Wiederlight*, 208 Conn. 525, 530, 546 A.2d 216 (1988) (reasonableness of covenant not to compete); *Scott* v. *General Iron & Welding Co.*, 171 Conn. 132, 137–38, 368 A.2d 111 (1976) (same). In making its determination of whether such a preemptive option is reasonable, the court must take into account the following factors: "(1) the purpose of the pre-emption, (2) its duration, and (3) the method of determining the price to be paid."[7] Annot., supra, 40 A.L.R.3d 926; *Metropolitan Transportation Authority* v. *Bruken Realty Corp.*, 501 N.Y.2d 156, 167–68, 492 N.E.2d 379, 501 N.Y.S.2d 306 (1986); *J L J Associ-*

---

[7] We have never before attempted to define the factors that must be weighed in determining whether a preemptive option is "reasonable" or "unreasonable." Although older cases of this court have addressed the validity of such rights, none of the opinions in those cases clearly sets forth why the right was being held valid or invalid. Nevertheless, the results reached in these cases can be understood by reference to the three factors announced today, and specifically the third factor relating to the method of setting the price for the property. For example, in *Lewis Oyster Co.* v. *West*, 93 Conn. 518, 107 A. 138 (1919), the holder of the preemptive option was entitled to purchase the seller's property for a flat price of $2500 plus improvements, regardless of the market price or the price offered by a third party buyer. This court, in holding the provision invalid, stated that "[i]t is not consistent with the public policy of Connecticut . . . that the dead hand of the [property seller] should rest on this property and control its price . . . ." Id., 533. As the Restatement recognizes, "[f]ixed price preemptions and preemptions at a percentage of [market price] are the most commonly used preemptive provisions that [are restraints on alienation]. . . . The effect of such a provision on the alienability of property is directly proportional to the difference between the market value and option price of the property." 1 Restatement (Second), Property, Donative Transfers § 4.4, reporter's note 4 and 4 (a) (1983).

*ates, Inc.* v. *Persiani*, 41 Conn. Sup. 79, 88, 550 A.2d 650 (1988); see generally 1 Restatement (Second), Property, Donative Transfers § 4.4 (1983). Thus, although the court's ultimate determination of the reasonableness of the preemptive option is a legal one, the court can make that legal determination only after engaging in factual determinations regarding the purpose, duration and method of setting the price for the parcel in question. Cf. *Robert S. Weiss & Associates, Inc.* v. *Wiederlight*, supra, 529 n.2 (requiring court, in evaluating reasonableness of covenant not to compete, to weigh five fact-bound considerations).

For several reasons, we are persuaded that the trial court should not have granted the defendants' motion for summary judgment on the ground that the preemptive option was unreasonable. First, there is no indication in the record that the trial court, in making its determination of reasonableness, considered any factor other than the duration of the restraint. The transcript of the court's oral decision contains repeated references to the termination date of the preemptive option, but none to its purpose or to the method of determining price. Because the record does not demonstrate that the trial court properly applied the law with respect to the reasonableness of the preemptive option, therefore, the summary judgment cannot be sustained.

Second, genuine issues of material fact exist with respect to the two factors apparently not considered by the trial court. For example, with respect to the purpose of the preemptive option, the plaintiff's affidavit indicated that the plaintiff had sought such a right because he was concerned about how the property north of the discontinued highway would be developed. This was in stark contrast to the assertion of the defendants that the preemptive option applied only as to the discontinued highway itself. Moreover, with

respect to the method for determining the price to be paid, it was unclear whether the provision gave the plaintiff a right to purchase at the "asking price" at which the McClellans initially listed their property for sale, or the price at which a third party buyer ultimately agreed to purchase it. Indeed, the briefs of the parties in this court demonstrate that this issue remains unclear. The defendants argue that the plaintiff, at most, had an option to purchase at $59,000, the McClellans' original asking price.[8] The plaintiff, however, insists that he had an option to purchase at $45,000, the price ultimately paid by Curley. This continuing dispute on the purpose of the preemptive option and the method of setting the price of the property, two material factors that must be weighed in determining whether the preemptive option itself is reasonable, demonstrates that the trial court should not have rendered summary judgment for the defendants. Rather, the trial court should have conducted a further evidentiary inquiry into the purpose and the price at which the preemptive option could be exercised.

[8] The defendants argue, as an alternative ground for affirming the decision of the trial court, that the provision in question was not a preemptive option at all, but a strict option. According to the defendants, this distinction is determinative of how much the holder of the right must pay for its exercise. The defendants argue that if the right is characterized as an option, the plaintiff had only the right to purchase the property at the price at which the sellers initially placed it on the market. On the other hand, according to the defendants, if the right is characterized as a preemptive option, the plaintiff had the right to purchase the property for the price at which the sellers actually received an offer to buy.

Although we agree with the defendants that there is a technical difference between an option and a preemption; see footnote 6 and accompanying text; we do not agree that this difference necessarily determines the price that the holder of the option must pay for its exercise. We can find no authority for such a proposition, nor have the defendants cited any. Moreover, we cannot imagine why the parties to such a contract should not be allowed to determine for themselves on what terms or at what price the right may be exercised, regardless of whether it is labeled an "option" or a "preemptive option." Indeed, the fact that the defendants dispute the method for determining the price to be paid bolsters the plaintiff's argument that summary judgment was not proper in this case.

Finally, the trial court, in considering the duration of the preemptive option, looked to the incorrect period of time. The trial court repeatedly expressed its belief that the preemptive option was of "unlimited duration" and that its duration thus far had exceeded twenty-one years. While it is true that the *life* of the preemptive option may have been unlimited,[9] and that it thus far had been in existence for twenty-one years, these considerations are not relevant to the "duration" of the preemption's restraint on alienation.

"The duration of the restraint is not measured by the life of the preemptive right. The rule does not condemn restrictions on transfer, i.e., provisions which postpone sale during the option period: it condemns only the 'effective *prohibition* against transferability itself' . . . ." (Citations omitted; emphasis in original.) *Metropolitan Transportation Authority* v. *Bruken Realty Corp.*, supra, 501 N.Y.2d 167. Thus, the duration of a restriction is not measured by the life of the right, but by the "period during which the right could be exercised after the [seller] decided to sell." Id.; see 1 Restatement (Second), supra, § 4.4, comment (a), illustration 3 (where provision requires holder of right to act within ten days from date price is set by two appraisers, "the terms of the agreement provide a reasonable means of setting the price, and specify that [the holder of the right] must act with reasonable expedition").

In this case, the language of the preemptive option stated that "the Buyer shall have an option to purchase same for the asking price and for a period not to exceed *thirty days* after written notice has been mailed by the Seller to the Buyer at the Buyer's last known address. Failure to exercise this option within the said *30 day*

[9] We note, however, that the 1973 deed from Tourtellotte to the plaintiff appears to have given a preemptive option only to the "buyer," rather than to the buyer and his heirs, devisees and assignees.

*period* shall render this option null and void, and of no effect." (Emphasis added.) Thus, the preemptive option contains a term of duration of thirty days, and this period must be weighed, along with the purpose of the preemptive option and the method of ascertaining the price, in determining whether the preemptive option as a whole is "reasonable." The trial court, therefore, should not have rendered summary judgment for the defendants on the ground that the preemptive option was unreasonable.

## II

The trial court's second stated ground for granting summary judgment was its conclusion that, regardless of whether the preemptive option was reasonable, the Curley parcel would not have been subject to it. The court first determined that "the deed is clear on its face" that properties subject to the right must be "contiguous" to the plaintiff's land, and that "[t]he deed needs no further interpretation." The court further concluded that the Curley parcel was not contiguous to the plaintiff's land because that parcel was separated from the plaintiff's land by the discontinued highway. The trial court, therefore, rendered judgment for the defendants on this ground. We disagree with the trial court's interpretation of the deed and, consequently, with its decision to render summary judgment.

In construing a deed, a court must consider the language and terms of the instrument as a whole. *Lake Garda Improvement Assn.* v. *Battistoni,* 160 Conn. 503, 511, 280 A.2d 877 (1971). "Our basic rule of construction is that recognition will be given to the expressed intention of the parties to a deed or other conveyance, and that it shall, if possible, be so construed as to effectuate the intent of the parties. . . . In arriving at the intent expressed . . . in the language used, however, it is always admissible to consider the situation of the

parties and the circumstances connected with the transaction, and every part of the writing should be considered with the help of that evidence." (Internal quotation marks omitted.) *Faiola* v. *Faiola*, 156 Conn. 12, 17, 238 A.2d 405 (1968); *Lake Garda Improvement Assn.* v. *Battistoni*, supra, 513 ("court may also consider the surrounding circumstances at the time of the conveyance, and the situation of the parties at that time"). "The construction of a deed in order to ascertain the intent expressed in the deed presents a question of law and requires consideration of all its relevant provisions in the light of the surrounding circumstances. . . . On appeal the scope of review of such a question is plenary . . . ." (Citation omitted.) *Carbone* v. *Vigliotti*, 222 Conn. 216, 222, 610 A.2d 565 (1992).

The record in this case demonstrates that the trial court did not properly apply these principles in interpreting the language of the deed. The trial court, determining that "the deed is clear on its face" and that "[t]he deed needs no further interpretation," declined to consider the circumstances surrounding the inclusion of the preemptive option in the deed or the intention of the parties with respect to its language. For two reasons, however, we conclude that the language of the provision was not clear and unambiguous, and that the trial court should have looked to extrinsic evidence offered by the parties as to their intentions and the circumstances surrounding the inclusion of the preemptive option in the deed.

First, the word "contiguous" is not susceptible of only one clear and definite meaning. Although the defendants assert that the preemptive option applies only to property that was in "actual contact, or touching" the land of the plaintiff, that is not the only possible interpretation. Black's Law Dictionary, for example, defines contiguous as also meaning "[i]n close proximity," "neighboring" or "near in succession." Black's Law

Dictionary (6th Ed. 1990). Webster's defines contiguous as meaning, in addition to actual contact, "near, though not in contact; neighboring." Webster's New International Dictionary (1916). These definitions do not require actual contact between two things in order for them to be contiguous. A determination of how much of the defendants' property is subject to the preemptive option, therefore, can be made only by reference to extrinsic evidence.

Second, the interpretation proffered by the defendants is not wholly consistent with other provisions contained in the deed. For purposes of exercising the preemptive option, the deed states that "the 'discontinued highway' on the above map shall be deemed to be contiguous land of the seller." The defendants assert that this provision means only that the road, and not property north of the road, is subject to the plaintiff's right of first refusal. In the deed, however, Tourtellotte had "expressly disclaim[ed] any warranties with reference to this road," though she had warranted the remainder of the property conveyed. Indeed, the language of the deed indicates that Tourtellotte was not even certain that she had "a sufficient legal interest in and to said road" in order to grant the plaintiff a right of way over it. It seems highly doubtful that the parties would have negotiated a provision granting the plaintiff a preemptive option in property that the seller was not even certain was hers. It is more reasonable that the parties included this provision as a precaution against the possibility that Tourtellotte did not have a legal interest in the road. In such a case, the provision in the deed would have operated to make clear that, for purposes of the preemptive option, the discontinued highway that was owned by someone else would not sever the otherwise "contiguous" property to the north of the highway owned by the defendants and render that property no longer subject to the plaintiff's preemptive option.

The extrinsic evidence submitted by the parties, which the trial court declined to consider, was informative on the issues of what intention the parties ascribed to the language of the preemption and the circumstances surrounding the execution of the deed. According to the plaintiff's affidavit, for example, the purpose of expressly defining the discontinued highway as contiguous to the plaintiff's land "was to join the land northerly of the discontinued highway with the discontinued highway and assure that it would be treated as contiguous and subject to my right of first refusal." In other words, the discontinued highway was not to be viewed as a separate parcel, but was to be viewed as attached to the contiguous land lying to the north. The affidavit of the attorney who represented the plaintiff at the time of the conveyance also supported this interpretation. The attorney stated that "contiguous" referred to "all the land northerly of the parcel that he was purchasing, as well as that southerly and easterly of the subject property." Furthermore, on two previous occasions, Tourtellotte and the defendants had notified the plaintiff that parcels north of the discontinued highway would be sold, and offered to allow him to purchase the parcels in accordance with the language contained in the deed. The trial court should have considered this evidence in determining the meaning and scope of the preemptive option, and should not have rendered summary judgment for the defendants on the basis of the language in the deed alone.

Indeed, the rules applicable to the construction of contracts in general yield the same result. Although the parol evidence rule "prohibits the introduction of evidence that varies or contradicts an exclusive written agreement"; *Ruscito* v. *F-Dyne Electronics Co.*, 177 Conn. 149, 160, 411 A.2d 1371 (1979); that rule "does not bar the use of extrinsic evidence to aid in the interpretation of contractual language." *Heyman Associates*

*No. 1* v. *Insurance Co. of Pennsylvania*, 231 Conn. 756, 781 n.22, 653 A.2d 122 (1995); *Bead Chain Mfg. Co.* v. *Saxton Products, Inc.*, 183 Conn. 266, 272–73, 439 A.2d 314 (1981). To the contrary, extrinsic evidence is always admissible "to explain an ambiguity appearing in the instrument." (Internal quotation marks omitted.) *Heyman Associates No. 1* v. *Insurance Co. of Pennsylvania*, supra, 780; *Jay Realty, Inc.* v. *Ahearn Development Corp.*, 189 Conn. 52, 56, 453 A.2d 771 (1983).

For the reasons set forth above, the language in the deed and the scope of the preemptive option are ambiguous, thus requiring reference to extrinsic evidence such as the affidavits of the plaintiff and his attorney and the past course of dealing of the parties when other parcels north of the road had become available. The trial court, therefore, should not have rendered summary judgment for the defendants on the ground that the language of the deed was "clear on its face."

The judgment is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.

In this opinion the other justices concurred.