[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The defendant, New Haven Savings Bank (bank), moves for summary judgment on count one of the plaintiff's complaint. The defendants Mark I. Harrison (Harrison) and Harrison Research Drive Realty, L.L.C. move for summary judgment on counts two through five. The plaintiff, Ronald Farber, has filed cross-motions for summary judgment against the defendants and alternatively argues that there are outstanding material issues of fact that require that the defendants' motions be denied. The principal questions raised by the parties' motions are (1) whether there existed an enforceable contract for the sale of real property from the bank to the plaintiff and (2) whether Harrison tortiously interfered with the plaintiff's business expectancy. The court answers both questions in CT Page 11461 the negative.
The parties' affidavits and supporting documents reflect the following undisputed facts. The bank owned a parcel of real estate known as Lot 1, 3 Research Drive, Woodbridge, Connecticut. On June 9, 1997, the plaintiff offered to purchase this property from the bank for $55,000. The plaintiff submitted this offer through his real estate agent, Steve Miller, to the bank's broker, John Mullin, on a Greater New Haven Association of Realtors Approved Standard Form of Agreement. The bank responded with a verbal counteroffer of $60,000. The plaintiff rejected the counteroffer and, on June 16, 1997, verbally communicated through Miller to Mullin an offer of $57,500. The bank verbally accepted this offer.
By letter dated June 16, 1997, Andrew Hvizd III, assistant vice president of the bank, transmitted to Mullin duplicate bank form sales contracts for the subject property. Hvizd was authorized to negotiate on behalf of the bank but not to give final approval for the sale of property. The documents that Hvizd transmitted to Mullin identified the bank as seller and stated that the subject of the sale was "LOT 1 RESEARCH DRIVE WOODBRIDGE, CT, together with all buildings and other improvements thereon and all appurtenances thereto, all in heir present condition, which is more particularly described on Schedule A attached hereto and made part hereof . . ." Schedule A, however, was not attached. The bank's form sales contracts stated that the purchase price was $57,500 with no mortgage contingency, provided a deposit amount of $5,750 and set a closing date.
In his letter to Mullin enclosing these documents, Hvizd stated that Schedule A was being prepared by the bank's attorney. Hvizd also stated to Mullin that "[o]nce you have obtained the buyers [sic] signature, forward to the Bank for signature and a signed contract will then be returned to the buyer."
On or about June 17, 1997, the plaintiff, unaware that the bank was sending its own form contract to him, signed and Miller faxed to the bank a Greater New Haven Association of Realtors Standard Form of Agreement containing the plaintiff's offer to purchase the property for the agreed upon price of $57,500. The plaintiff also forwarded the bank a deposit check in the amount of $5,750. The check indicated that it was for "3 Research Drive — Woodbridge."
On the following day, June 18, 1997, the plaintiff received the two identical bank contracts, as well as Hvizd's signed letter of enclosure to Mullin. On or about June 25, 1997 the plaintiff received the bank's Schedule A which was referred to in the letter of enclosure. The CT Page 11462 plaintiff forwarded the bank's form sales contracts and Schedule A to his lawyer for review. On or about June 30, 1997, the plaintiff's attorney telephoned Mullin to discuss an apparent error in the property description that referred to there being buildings and improvements included in the sale. No buildings or other improvements1 in fact, existed on the land.
Around this time, the plaintiff had a conversation with Harrison's brother, Randall Harrison, in which he remarked that the he had made an offer to purchase the property which the bank was prepared to accept. After his brother related this information to him, the defendant Harrison wrote to the bank asserting that he had a right of first refusal for the property and offered to purchase it for $57,500. On July 7, 1997, the bank wrote to Harrison informing him that it was not accepting his offer but was requesting that both he and the plaintiff "resubmit through their brokers their highest and best offer" for the property. The bank returned both parties' deposits. The plaintiff refused to rebid the property, maintaining that he already had a contract with the bank to purchase it. The bank subsequently sold the property to Harrison Research Drive Realty, L.L.C., a limited liability company of which Harrison is a member, for $58,000. Additional facts will be discussed where relevant.
"Summary judgment shall be rendered forthwith if the pleadings, affidavits and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Dept. of SocialServices v. Saunders, 247 Conn. 686, 696, 724 A.2d 1093 (1999). "Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact, together with the evidence disclosing the existence of such an issue." (Citations omitted. Internal quotation marks omitted.) Maffucci v. Royal Park Ltd. Partnership, 243 Conn. 552, 554,707 A.2d 15 (1998)
"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . ." (Internal quotation marks omitted.) Hertz Corp. v. Federal Ins. Co.,245 Conn. 374, 381, 713 A.2d 820 (1998). Summary judgment "is appropriate only if a fair and reasonable person could conclude only one way." Millerv. United Technologies Corp., 233 Conn. 732, 751, 660 A.2d 810 (1995)
 I
The bank argues that count one of the plaintiff's complaint is barred by the statute of frauds because no officer of the bank ever signed a CT Page 11463 contract to sell the property to the plaintiff.
The statute of frauds, General Statutes § 52-550 (a)(4), provides in relevant part: "No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged. . . . (4) upon any agreement for the sale of real property or any interest in or concerning real property . . ." A written agreement for the sale of real estate is unenforceable under the statute of frauds where it is unsigned by the party to be charged or his agent. Waters v.Hartnett, 5 Conn. Cir. 687, 689, 260 A.2d 615 (App.Div. 1969)
The plaintiff claims that a binding contract was created by the bank's sending him its form sales contracts which were later, in this litigation, produced from the bank's custody. The plaintiff's' position is that the form sales contracts that the bank forwarded to him constituted not an offer but an acceptance of his offer to purchase the property. Moreover, argues the plaintiff, his written offer, together with the bank's form sales contracts contain the essential terms of the parties' agreement. "To comply with the statute of frauds an agreement must state the contract with such certainty that its essentials can be known from the memorandum itself, without the aid of parol proof, or from a reference contained therein to some other writing or thing certain; and these essentials must at least consist of the subject of the sale, the terms of it and the parties to it, so as to furnish evidence of a complete agreement." (Internal quotation marks omitted.) Breen v.Phelps, 186 Conn. 86, 92, 439 A.2d 1066 (1982). The essential terms of the contract, and not every single term of the contract, must be set forth therein. Fruin v. Colonnade One at Old Greenwich Ltd. Partnership,38 Conn. App. 420, 426, 662 A.2d 129 (1995), aff'd, 237 Conn. 123,676 A.2d 369 (1996). "Because the primary purpose of the statute is to provide reliable evidence of the existence and the terms of the contract, the requirements of the statute can be met either by a single document or . . . by a series of related writings which, taken together, describe the essential terms and conditions of the contract." Heyman v. CBS, Inc.,178 Conn. 215, 221, 423 A.2d 887 (1979).
Although the plaintiff concedes that the form sales contract itself does not contain a manual signature on behalf of the bank, he contends that the document is nonetheless "signed" as required by the statute of frauds because it was prepared by the bank and identified the bank as the seller.
The plaintiff relies on Kilday v. Schancupp, 91 Conn. 29, 98 A. 335
(1916). In Kilday, the defendant, after the plaintiff orally agreed to sell him two parcels of real estate, prepared a memorandum of the CT Page 11464 agreement and its terms, identifying himself as the purchaser, and delivered the document to the plaintiff with a request that she sign it. She did so, and the defendant later refused to purchase the property. The Supreme Court held that the document sufficiently manifested defendant's "signature." "This agreement was caused to be prepared by the defendant and it begins, `Sold to J. Schancupp.' This is the written declaration of the defendant himself that the plaintiff has sold him the property described, upon the terms described, and likewise it is his written declaration of purchase of this property upon the named terms. The statute is intended to relieve against fraud; to hold that this defendant, by writing his name in the body of this instrument instead of at its end, did not sign the instrument, would help perpetrate, instead of prevent, a wrong. An instrument signed by one in any part of it after the body of it is written, or signed in any part and, when completed, produced from his custody, must be taken to be the instrument of the party so signing. Under these circumstances he authenticates by his signature, or by the signature to the instrument produced from his custody, the instrument so signed, and such a signature fully meets the requirements of the statute of frauds . . . The authorities are equally decisive that the signature may be printed or written." Id., 33-34.
This court finds Kilday inapposite. First, in Kilday, there was no question as to the authority of the defendant to create a binding contract. The defendant was an individual. Here, the party whom the plaintiff seeks to bind is a corporate entity. The plaintiff seeks to bind the bank based on the actions of its assistant vice president, Hvizd. Where, as here, no issue of detrimental reliance on the acts of the officer is alleged, the corporate officer may only bind the corporation in contract if he is acting within the scope of his employment. Cohen v.Holloways', Inc., 158 Conn. 395, 406-07, 260 A.2d 573 (1969). The plaintiff has not presented evidence to refute the evidence that Hvizd, in fact, did not have authority to bind the bank in a contract to sell real estate. Therefore, as a matter of law, Hvizd could not and did not bind the bank in contract by sending documents to the plaintiff.
Moreover, the acceptance of an offer must "be explicit, full and unconditional." Bridgeport Pipe Engineering Co. v. DeMatteo ConstructionCo., 159 Conn. 242, 246, 268 A.2d 391 (1970); see Pleines v. FranklinConstruction Co., 30 Conn. App. 612, 616, 621 A.2d 759 (1993). Paragraph 4 of the bank's form sales contract states that the "[s]eller's obligations under the within Agreement are contingent upon the approval of the within Agreement by the Board of Directors of the New Haven Savings Bank at its next regular meeting following the date of this Agreement." Contingent in this context means "dependent on or conditioned on something else. . . ." Merriam Webster's Collegiate Dictionary (10th Ed. 1991). The bank's form sales contract, therefore, was not CT Page 11465 unconditional and the bank was not bound by it until the board of directors approved it. See Alfred M. Best Co., Inc. v. Goldstein,124 Conn. 597, 602, 1 A.2d 140 (1938).
In Alfred M. Best Co., Inc. v. Goldstein, supra, 124 Conn. 597, the plaintiff's agent solicited the defendant attorney to have his name listed in the plaintiff's publication. The defendant signed the plaintiff's printed form contract. The contract provided that the plaintiff had the right to reject any contract. The contract was signed by the plaintiff's agent and the defendant in Connecticut and then forwarded to the plaintiff's home office in New York where it was approved. When the defendant failed to pay the amount due under the contract, the plaintiff brought suit. The Supreme Court, in determining whether the plaintiff had illegally transacted business in Connecticut, determined that no contract was created until the plaintiff approved it in New York. "Each contract contained the provision that it constituted the entire agreement between the parties, and that the plaintiff in its discretion might reject any contract upon refund of the amount paid therefor or discontinue it at any time without notice upon refund of the proportionate unearned amount paid. The right of the plaintiff to reject the contract at its discretion and the facts that the contract called for its approval, that it was so approved, and that the defendant was notified of that approval show the intent of the parties to have been that the entire agreement was not to become effective until approved. The signing of the agreement was no more than an offer which ripened into a contract only when approved by the company. Had the defendant paid the agreed price, this would have been merely an incident to the offer. The unqualified right of the plaintiff to reject the contract prevented any legal right arising under it while it remained executory. . . ." Id., 602; see also R.F. Baker Co., Inc. v.P. Ballentine Sons, 127 Conn. 680, 682-83, 20 A.2d 82 (1941). As the Supreme Court stated in Gurfein v. Werbelovsky, 97 Conn. 703, 705,118 A. 32 (1922) "`To agree to do something and reserve the right to cancel the agreement at will is no agreement at all.
Because Hvizd was not authorized to bind the bank in a contract to sell real estate and because the document he forwarded to the plaintiff provided that the bank's obligations were contingent on the board of directors approving the agreement, the bank did not accept the plaintiff's offer. Therefore, no contract was created. For this reason, the bank's motion for summary judgment is granted.
 II
The defendants, Mark I. Harrison and Harrison Research Drive Realty, L.L.C., move for summary judgment on counts two, three, four and five of the plaintiff's complaint on the ground that these counts are based on CT Page 11466 the existence of a valid contract between the plaintiff and the bank. Since no such contract exists, the defendants contend that they are entitled to summary judgment. In counts two and three, the plaintiff alleges causes of action for tortious interference with contract against Harrison and Harrison Research Drive Realty, L.L.C., respectively. In counts four and five, the plaintiff alleges causes of action for tortious interference with business expectations against Harrison and Harrison Research Drive Realty, L.L.C., respectively.
The following additional facts are necessary for the resolution of the defendants' motion for summary judgment. V M H Realty, of which Harrison is a member, owns property contiguous to the subject property. In 1996, the bank rejected an offer by Harrison to purchase the subject property for $38,700. However, at that time Diane Wishnafski, Senior Vice president of the bank, verbally offered Harrison, on behalf of V M H Realty, the opportunity to submit an offer on the property if the bank "had a viable buyer." As a result, Harrison understood that he had a right of first refusal to purchase the property "on the same terms and conditions that the bank would have been willing to accept from [the other] party."
On June 29 or 30, 1997, Harrison learned that the bank was prepared to accept the plaintiff's offer for the purchase of the property. On June 30, 1997, Harrison wrote to the bank offering to purchase the property for $57,500.[1] Harrison, who has known the plaintiff all his life, then telephoned the plaintiff to advise him "exactly what was going on." Harrison informed the plaintiff that he had a right of first refusal on the property which he was going to exercise.[2]
On July 1, 1997, Harrison again wrote to the bank offering to purchase the property for $57,500[3] The bank did not accept Harrison's offer but stated that it was inviting both the plaintiff and Harrison the opportunity to "resubmit . . . their highest and best offer." The bank subsequently sold the property to Harrison Research Drive Realty, L.L.C. for $58,000.00.
Because, as determined in part I, there was never a valid contract between the plaintiff and the bank, there can be no liability for interference with contract. Carta v. Marino, 13 Conn. App. 677,538 A.2d 1091 (1988); see Dacourt Group, Inc. v. Babcock Industries,Inc., 747 F. Sup. 157, 160 (D. Conn. 1990) Thus, the defendants are entitled to summary judgment on counts two and three.
However, Connecticut recognizes a cause of action for unlawful interference with prospective contractual relations or a business expectancy. Goldman v. Feinberg, 130 Conn. 671, 674, 37 A.2d 355 (1944); CT Page 11467Golembeski v. Metichewan Grange No. 190, 20 Conn. App. 699, 702,569 A.2d 1157 (1990). "[lit is not essential to that cause of action that it appear that the tort has resulted in a breach of contract to the detriment of the plaintiff . . . The law does not . . . restrict its protection to rights resting upon completed contracts. . . ." (Internal quotation marks omitted.) Goldman v. Feinberg, supra, 130 Conn. 674.
"The necessary elements of a cause of action in tortious interference with business relations are the existence of a business relationship, an intentional and improper interference with that relationship and a resulting loss of benefits of the relationship." (Internal quotation marks omitted.) Holler v. Buckley Broadcasting Corp., 47 Conn. App. 764,768, 706 A.2d 1379 (1998). "[lit is essential to a cause of action for unlawful interference with business that it appear that, except for the tortious interference of the defendant, there was a reasonable probability that the plaintiff would have entered into a contract or made a profit." Selby v. Pelletier, 1 Conn. App. 320, 323, 472 A.2d 1285
(1984), quoting Goldman v. Feinberg, supra, 130 Conn. 675. Here, it cannot be said that except for Harrison's interference, the plaintiff and the bank would not have entered into a binding contract. As to this question, there is a material issue of fact.
However, "not every act that disturbs a contract or business expectancy is actionable. . . . [F']or a plaintiff successfully to prosecute such an action it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously. . . . [Am action for intentional interference with business relations . . . requires the plaintiff to plead and prove at least some improper motive or improper means. . . . The plaintiff in a tortious interference claim must demonstrate malice on the part of the defendant, not in the sense of ill will, but intentional interference without justification." (Citations omitted; internal quotation marks omitted.) Daley v. Aetna Life Casualty Co.,249 Conn. 766, 805-06, 734 A.2d 112 (1999). "Stated simply, to substantiate a claim of tortious interference with a business expectancy, there must be evidence that the interference resulted from the defendant's commission of a tort. [A] claim is made out [only] when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself." (Internal quotation marks omitted.) Golembeski v. Metichewan Grange No. 190, supra,20 Conn. App. 703. This, it should be emphasized, is part of the plaintiff's case and his burden to plead and prove; it is not a matter of defense. Blake v. Levy, 191 Conn. 257, 262, 464 A.2d 52 (1983)
The plaintiff claims that Harrison made a fraudulent representation to CT Page 11468 the bank when he claimed that he had a right of first refusal on the subject property. "The essential elements of an action in fraud . . . are (1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury." J. Frederick Scholes Agency v.Mitchell, 191 Conn. 353, 358, 464 A.2d 795 (1983).
"[O]ur cases have consistently required that, as one element of fraudulent misrepresentation, a representation be made as a statement of fact." Crowther v. Guidone, 183 Conn. 464, 467, 441 A.2d 11 (1981). "The requirement that a representation be made as a statement of fact focuses on whether, under the circumstances surrounding the statement, the representation was intended as one of fact as distinguished from one of opinion." Meyers v. Cornwell Quality Tools, Inc., 41 Conn. App. 19, 28-29,674 A.2d 444 (1996).
The statement in Harrison's letter to Wishnafski which the plaintiff claims was a fraudulent misrepresentation is: "This deposit represents our election to exercise our right of first refusal on that real estate."
"A right of first refusal is known more technically as a preemptive option, as a right of preemption, or simply as a preemption. A right of preemption is a right to buy before or ahead of others; thus, a preemptive right contract is an agreement containing all the essential elements of a contract, the provisions of which give to the prospective purchaser the right to buy upon specified terms. . . ." Hare v. McClellan, 234 Conn. 581,588-89, 662 A.2d 1242 (1995)
Harrison's statement was not a statement of fact. It was his characterization of the nature the deposit he was making. Even if the statement represented his understanding of the bank's promise to him, it was at best his lay opinion of the nature of that promise, made to the individual, Wishnafski, who had made the promise, and not a statement of fact. See Michaels v. Amway Corp., 206 Mich. App. 644, 522 N.W.2d 703,707 (1994); 600 West 115th St. Corp. v. 600 West 115th St. Condominium,180 App.Div.2d 598, 599, 580 N.Y.S.2d 307 (1992); George Backer ManagementCorp. v. Acme Quilting Co., 46 N.Y.2d 211, 220, 385 N.E.2d 1062,413 N.Y.S.2d 135 (1978); Zuyder Zee Land Corp. v. Broadman Bldg. Co.,
86 N.Y.S.2d 827, 828 (Sup.Ct.), aff'd 276 App.Div. 751, 92 N.Y.S.2d 607
(1949), app. den., 276 App.Div. 834, 93 N.Y.S. 729 (1949); Rheingans v.Smith, 116 Cal. 362, 119 P. 494, 495-96 (1911); see Lefferts v.Lefferts, 243 App.Div. 278, 279, 276 N.Y.S. 809 (1935) (generally fraud cannot be based on a misrepresentation of the legal effect or consequence of a personal transaction). Moreover, Wishnafski was obviously not CT Page 11469 unsophisticated in such matters and there was no fiduciary or other confidential relation between them. Nor did Harrison purport to render a legal opinion.[4]
Beyond this, Harrison did nothing more than offer to purchase the property from the bank, initially at the same price as the plaintiff had offered and subsequently for $500 more. There is nothing tortious in this conduct. See Old Quarry Association v. Hickey, 659 F. Sup. 1064, 1073
(D. Conn. 1986) annot., "Liability for Tortious Interference with Prospective Contractual Relations Involving Sale of Business, Stock, or Real Estate," 71 A.L.R.5th 491, 604-606 § 57 (1999). "The mere inducement of another to refrain from the formation of a contract, if done in good faith, without malice or the employment of improper means, constitutes no grounds for an action for intentional interference with contractual relations." Helvey v. O'Neill, 153 Ind. App. 635,288 N.E.2d 553, 560 (1972). The free and open market in real estate, on which our free enterprise economy depends, is not well served by requiring prospective purchasers to make competing offers at their peril.
The plaintiff's motions for summary judgment are denied. The defendants' motions for summary judgment are granted.
BY THE COURT
Bruce L. Levin Judge of the Superior Court