JOHN JONES, in equity, *vs.* ROBERT W. LIGHT.

Knox.    Opinion May 29, 1894.

</div>

*Fraudulent Conveyances.    Subsequent Creditors.    Notice.    Stat. 13, Eliz. c. 5.*

Where a conveyance though absolute in form, but for a consideration grossly inadequate, the grantor retaining a valuable interest in the property, is made with the intent to hinder and delay creditors, and this intent is participated in by both parties, such conveyance is void, not only against existing but against subsequent creditors and *bona fide* purchasers, whether they have notice of such conveyance or not.

A mortgagee is a purchaser.

ON REPORT.

The case appears in the opinion.

*C. E. and A. S. Littlefield*, for plaintiff.

*W. H. Fogler*, for defendant.

SITTING: PETERS, C. J., WALTON, FOSTER, HASKELL, WHITEHOUSE, JJ.

FOSTER, J.    This is a bill in equity, the main object of which is for the removal of a cloud upon the plaintiff's title. The prayer is for a decree rendering void a deed given by Lewis McDonald to Robert W. Light, the defendant, dated June 16, 1885, and if not void, that it may be in equity a mortgage only.

The claim of the plaintiff is that this deed, absolute in form, was without consideration, or if for any, for one grossly inadequate, and made with the intent to hinder and delay creditors, and that this intent was participated in by both parties.

If the position of the plaintiff is supported by the facts, the authorities are unquestioned, and the principle firmly established, which hold that such a conveyance is void, not only against existing but subsequent creditors and *bona fide* purchasers. It would

fall within the prohibition of the statute 13 Eliz., c. 5, which has become a part of our common law, and which was passed "for the avoiding and abolishing of feigned, covinous, and fraudulent feoffments, gifts, grants, alienations, conveyances, bonds, suits, judgments, and executions, devised and contrived of malice, fraud, covin, collusion, or guile, to the end, purpose, and intent to delay, hinder, or defraud creditors, and others, of their just and lawful actions, suits, debts, accounts, damages, penalties, forfeitures, heriots, mortuaries, and reliefs."

To intelligently understand the case it is necessary to present the following facts.

Sometime in March, 1885, Lewis McDonald found it impossible to meet his indebtedness to his creditors, and executed a mortgage of all his real estate in North Haven to Wright Bros. & James of Boston, whose claim against him at that time was upwards of $1200. In the course of two or three months it became apparent that the indebtedness of McDonald was very much in excess of what it was supposed to be at the time the mortgage was given. Realizing that the mortgage could not be upheld as against all the other creditors, Wright Brothers & James, on the 19th day of June, joined with the other creditors and filed a petition in insolvency against McDonald.

On June 16th, 1885, three days before the petition in insolvency was filed, and about three months after the mortgage of all his real estate had been given by him to Wright Bros. & James to secure their $1200 claim, McDonald appears to have gone to Boston and executed a quitclaim deed of the same real estate for the nominal sum of one dollar and other valuable considerations, running to the defendant. This deed was either taken by McDonald to North Haven, or sent to him by mail, for the purpose, as the defendants says, of being acknowledged by McDonald and procuring the signature of his wife releasing dower. No mention was made in this deed of the mortgage then existing upon the property to Wright Bros. & James. A list of McDonald's creditors was furnished by him June 5, 1885, and in which the name of the defendant Light did not appear. After being decreed insolvent, McDonald furnished a list of his

real and personal property for the insolvent court, and in this list were included the three parcels of real estate which had been mortgaged to Wright Bros. & James, and which had, after the mortgage was given, been included in the quitclaim deed to the defendant Light. The mortgage to Wright Bros. & James was invalidated by the insolvency proceedings. A list of McDonald's creditors as amended after being first filed, when his composition agreement and settlement thereunder was made, contains no reference to the defendant Light. In the meantime McDonald had acknowledged the deed to the defendant, and sent the same to the registry for record without the signature of his wife.

To carry out the composition agreement with his creditors, it became necessary for McDonald to raise quite a sum of money. The principal security he had to offer for this purpose was the real estate included in the quitclaim deed to the defendant. With these three parcels, and his interest in certain vessels which turned out to be of no value, his attorney, B. K. Kallock, who was then acting for him, made an arrangement through G. M. Hicks, an attorney, and who was acting for the plaintiff in this suit, to hire $3600 of the plaintiff. Mr. Kallock at the time of the loan knew about the quitclaim deed to Light, — had talked it over with McDonald and with Mr. Hicks, counsel for the plaintiff. Mr. Hicks, had talked it over with McDonald who had told him that it was a bogus deed, without consideration, and given for the purpose of heading off the attorney for Wright Bros. & James, and that the defendant Light would never under any circumstances make any move under it.

Under these circumstances a loan was obtained from the plaintiff to McDonald, of $3600, the principal security for which was a mortgage of the same real estate which McDonald had previously included in the quitclaim deed to the defendant. With this money McDonald was enabled to carry out his composition agreement and effect a settlement with his creditors.

McDonald being unable to pay anything to the plaintiff upon his indebtedness to him, the mortgage was foreclosed, and the plaintiff took possession of the premises, and McDonald attorned to him, holding under him as his tenant.

It appears that the plaintiff himself had never personally had any knowledge whatever of the existence of the deed from McDonald to the defendant. That deed had remained in the custody of the register of deeds till sometime in 1891, or more than six years after it was executed, and after the mortgage from McDonald to the plaintiff. In August, 1891, McDonald being desirous of purchasing one of the parcels, went to the plaintiff and made a trade with him for its purchase, taking a bond for a deed to his son, paying a part down and giving his own notes for the remainder. About that time upon an examination of the records, the plaintiff, who at the time of the trial was over ninety years of age, learned for the first time of the deed from McDonald to the defendant. His attorney at once went to Boston, saw the defendant who then insisted on the validity of the deed to himself, and claimed to have expended from $3000 to $4000 in connection with the transaction, but refused to render any account of any advancements that he had made to McDonald. Up to this time the defendant had never asserted any title under his deed, or made any claim in any way to the possession of the property.

While the defendant now claims that a portion of the consideration for this deed, (more than two thirds the value of the property named therein, or certainly more than two thousand dollars), was to be afterwards rendered in professional services, he states that he has never made any memorandum of those services or charge thereof, never has notified McDonald of the amount which he claims for the same, and that McDonald has never called upon him for any statement of the amount. It will be noticed that in his answer filed to this bill, the defendant states that the consideration was all paid before and at the time of the execution of this deed to him.

It is expressly admitted by the defendant that at the time he took this deed, he was informed by McDonald that he was being pressed by his creditors, and one of the principal objects of the conveyance was to secure him for services which he was to perform in bringing about a compromise with McDonald's creditors. The real estate which was included in this deed was all the real

estate owned by McDonald. It appears to have been worth between $3000 and $4000, and the defendant admits that prior to the deed he had paid but $475, and after that enough to bring the amount up to $1000 ; and while he insists, that he never made any agreement either verbal or otherwise to reconvey to McDonald under any circumstances, or that there was any such understanding, he does admit that the balance of the consideration was to be paid in services to be rendered in the future, none of which had been rendered at that time. He also states that he does not expect to hold two of the parcels, and that he regards them as security only for services, none of which, as we have remarked, had been rendered at the time the deed was given. In his answer which was filed to this bill he denies that the deed was given to secure him for the payment of any sum due him for professional fees, or for the security of any sum or sums whatever.

McDonald testifies that there was an understanding between himself and the defendant that, by advancing money to him, the defendant was to have the homestead and McDonald was to occupy it and live in it and it was to be paid from the proceeds when sold, and that he trusted to the defendant's honesty in making a conveyance of this property to him by an absolute conveyance when the property was worth more than $3000, and he had received less than one third of its value.

In *Sidensparker* v. *Sidensparker*, 52 Maine, 481, 491, this court held that such an arrangement between grantor and grantee is a *continuing* fraud, and has been held void not only as against precedent, but, also, against subsequent creditors. In that case the grantor, as a part of the consideration of the deed, was to receive future support to be furnished by the grantee. The same doctrine is held in *Coolidge* v. *Melvin*, 42 N. H. 510, and cases there cited.

But from a very careful and thorough examination of the evidence in this case, we feel that in addition to any secret trust existing between McDonald and this defendant, the conveyance was made with an intent to hinder and delay creditors, and that this intent was participated in by both parties to the

conveyance. Such being the case, the deed from McDonald to the defendant would be void, not only as against existing creditors at the time the deed was executed, but also against subsequent creditors and *bona fide* purchasers.

This doctrine is distinctly laid down by this court in *Wyman* v. *Brown*, 50 Maine, 139, 148, where Mr. Justice WALTON, correctly stating the principle enunciated by the decided cases, says : "An absolute conveyance on full consideration, if made with intent to hinder and delay creditors, is undoubtedly void against existing creditors ; but we do not intend to decide that such a conveyance is void against subsequent creditors or purchasers ; we intend to decide only that, where a conveyance is for a consideration grossly inadequate, and is absolute in form only, the grantor retaining a valuable interest in the property, and the conveyance is made with the intent to hinder and delay creditors, and this intent is participated in by both parties, that such a conveyance is void, not only against existing creditors, but against subsequent creditors and *bona fide* purchasers, whether they have notice of such fraudulent conveyance or not." *Ricker* v. *Ham*, 14 Mass. 137 ; *Clapp* v. *Leatherbee*, 18 Pick. 131 ; *Beal* v. *Warner*, 2 Gray, 447 ; *Wadsworth* v. *Havens*, 3 Wend. 411 ; *Hudnal* v. *Wilder*, 4 McCord, 295 ; *Hill* v. *Ahern*, 135 Mass. 158.

The case of *Whitmore* v. *Woodward*, 28 Maine, 392, 418, is to the same effect, and the court there say : "The statute 13 Eliz., c. 5, is not confined in its operation to creditors existing at the time of the commission of the fraud, but embraces those who subsequently become such. It is not necessary to prove that the fraud was meditated against those who might become creditors at a subsequent period. If the transaction is actually fraudulent against any creditor, any and all creditors may impeach and resist it, and are entitled to the aid of the law in appropriating the property, fraudulently conveyed, to the payment of their debts. The uniform construction of that statute includes subsequent as well as existing creditors." *Howe* v. *Ward*, 4 Maine, 195 ; *Clark* v. *French*, 23 Maine, 221, 229 ; *Bangor* v. *Warren*, 34 Maine, 324; *Smith* v. *Parker*, 41

Maine, 452; *Marston* v. *Marston*, 54 Maine, 476; *Bailey* v. *Bailey*, 61 Maine, 361, 364. See also *Laughton* v. *Harden*, 68 Maine, 208, 211.

True, the plaintiff's agent and attorney at the time he loaned the money and took the mortgage, had notice of the deed from McDonald to the defendant, but he was assured and believed that the deed was invalid and that it would never be set up. And if the plaintiff himself is chargeable with all the knowledge which his agent had, he is not for that reason deprived of his remedy as a subsequent creditor, or purchaser for value in good faith, if that deed was given with an intention to defraud creditors, and the fraud was participated in by both parties to it, within the principle laid down in the foregoing decisions. *Ricker* v. *Ham*, 14 Mass. 137, 141; *Hill* v. *Ahern*, 135 Mass. 158, 159; *Clapp* v. *Leatherbee*, 18 Pick. 131, 138; *Wyman* v. *Brown*, 50 Maine, 139, 148. "A conveyance actually fraudulent is void against subsequent purchasers for valuable consideration, even with notice." American Leading Cases, 47. In *Wyman* v. *Brown, supra*, the court say that such a conveyance is void not only against existing creditors, "but against subsequent creditors and *bona fide* purchasers, whether they have notice of such fraudulent conveyance or not." In *Ricker* v. *Ham, supra*, Chief Justice Parker said: "We apprehend the term *bona fide*, as used in the law upon this subject, means only that the purchase shall be a real and not a feigned one; otherwise the knowledge would not be held immaterial, as it is in all the books."

A mortgagee is a purchaser. *Chapman* v. *Emery*, 1 Cowper, 278; *Hill* v. *Ahern, supra*.

That the plaintiff was a purchaser in good faith, within the meaning of the law relating to fraudulent conveyances, there can be no doubt. He actually paid $3600, receiving a mortgage upon property not worth more than that amount. That the transaction in relation to the conveyance in question was permeated with fraud, and that both parties participated in that fraud, the evidence fully satisfies us. But it will be of no general benefit to detail the facts appearing in evidence

which satisfy us of the fraudulent nature of the conveyance. They are disclosed sufficiently upon the record. Some of them have already been stated, but they are too manifold to be reproduced within the proper limits of an opinion which should determine the legal rights of parties, and the principles of law governing the same, instead of furnishing a summary of evidence which can be of no advantage in the decision of other cases.

The evidence shows that the plaintiff has been in possession of the premises since the foreclosure of his mortgage in 1888, and as the bill is informal in not sufficiently stating the plaintiff's possession (*Robinson* v. *Robinson*, 73 Maine, 170), an amendment may be made alleging such possession in the plaintiff. Thereupon a decree is to be entered sustaining the bill, and adjudging the deed from Lewis McDonald to Robert W. Light null and void, and that the defendant release all interest in the land described in said deed to the plaintiff.

*Decree accordingly, with costs for the plaintiff.*