WEBSTER TRUST ET AL. *v.* RUSSELL C.
ROLY, SR., ET AL.
(AC 20291)

Landau, Mihalakos and Hennessy, Js.

Argued January 12—officially released July 10, 2001

*Pasquale Young*, for the appellants (plaintiffs).

*Frederick P. Leaf*, with whom, on the brief, was *Susan King Shaw*, for the appellees (defendant Gerald S. Adinolfi et al.).

### Opinion

LANDAU, J. The plaintiffs[1] appeal from the judgment rendered in favor of the defendants[2] following a trial to the court. In this action, the plaintiffs prayed for equitable relief in the form of specific performance or a constructive trust with respect to certain real property. Although the parties raised many issues in their briefs,

---

[1] The plaintiffs are the trustees of the John Lescovich family trust (trust): Webster Trust, successor trustee to Sachem Trust Company, which was a successor trustee to Lafayette Bank and Trust Company, an original trustee, and Pasquale Young.

[2] The original defendants were Russell C. Roly, Sr., and his wife, Eleanor Augur Roly, Ruth A. Adinolfi and Gerald S. Adinolfi. Ruth A. Adinolfi is Eleanor Augur Roly's daughter. Russell C. Roly, Sr., died during the pendency of the action, and the plaintiffs withdrew their claims against his estate.

this court need only decide whether the trial court improperly concluded (1) that the offer to purchase was not bona fide, (2) that the plaintiffs failed to prove that they did not receive notice pursuant to the agreement at issue, in part, because the court improperly refused to admit into evidence a third party complaint, and (3) that the agreement was unreasonable and unrealistic. We reverse the judgment of the trial court.

The following facts are relevant to our resolution of this appeal. On July 5, 1977, the defendants Russell C. Roly, Sr., and Eleanor Augur Roly (Rolys) conveyed 9.84 acres of real property in North Branford to John Lescovich, who now is deceased. On September 26, 1977, the Rolys entered into a written agreement with Lescovich (agreement),[3] which stated, in part, that the Rolys "agree to give [Lescovich] personal notice of any bona fide offer to purchase any or all of" the real property (land) they own in North Branford.[4] The agreement

---

[3] At trial and in their briefs, the parties refer to the agreement as a right of first refusal. "A right of first refusal is known more technically as a preemptive option, as a right of preemption, or simply as a preemption." *Hare* v. *McClellan*, 234 Conn. 581, 588, 662 A.2d 1242 (1995).

[4] The agreement states: "FOR ONE DOLLAR AND OTHER VALUABLE CONSIDERATIONS, We Russell Roly and Eleanor Roly both of the Town of North Branford, County of New Haven and State of Connecticut (hereinafter referred to as the Grantors) do give and grant to JOHN LESCOVICH (hereinafter referred to as Grantee) of said North Branford and to his heirs, successors and assigns a right of first refusal to purchase all of the land owned by Grantors located in said Town of North Branford and situated to the west of land conveyed by the Grantors to the Grantee on the date of this instrument. *The Grantors agree to give the Grantee personal notice of any bona fide offer to purchase any or all of said land and the Grantee shall give notice to the Grantor within twelve (12) hours of the receipt of notice by him of his intention to buy any such land upon the same terms and conditions contained in any such bona fide offer to purchase any of the land referred to in this agreement.*

"The Grantors agree to convey any land covered by this agreement by warranty deed free and clear of all encumbrances if the right of first refusal is exercised by the Grantee. This agreement shall continue in force during the life of the Grantee and for twenty-one (21) years thereafter, and is binding on the heirs, successor and assigns of the parties hereto.

"IN WITNESS WHEREOF, the parties have hereunto set their hands and

was duly recorded in the land records of North Branford. Lescovich died in March, 1994, and the 9.84 acres and the agreement were devised by order of the Probate Court on November 13, 1997, to the family trust that had been created by Lescovich.

On April 9, 1997, the defendants Ruth A. Adinolfi and Gerald S. Adinolfi signed a standard real estate agreement form,[5] offering to purchase the land for $100,000. The Rolys accepted the offer by signing the agreement form on April 14, 1997. At the time, Russell C. Roly, Sr., was acting as Eleanor Augur Roly's conservator, and he secured approval from the Probate Court for Eleanor Augur Roly's estate to sell the land for $100,000. According to Ruth A. Adinolfi, the attorney that the Adinolfis retained to represent their interests in the transaction knew that there might be a preemptive option with respect to the land.[6] On June 30, 1997, the

seals at New Haven, Connecticut this 26th day of September, 1977." (Emphasis added.)

[5] The form contains the following language at the top of the page: "This is a legal and binding contract designed for the purchase and sale of one family residential property in the New Haven area. This form has been approved by the Greater New Haven Association of REALTORS*, Inc. It is appropriate for most BUT NOT ALL such transactions. If this form does not appear to either BUYER or SELLER to be appropriate for a particular transaction, you are urged to discuss the purchase or sale with an attorney of your choice BEFORE YOU SIGN. No provisions of this contract are fixed by law and all terms and conditions are subject to negotiation prior to signing."

[6] On direct examination, Ruth A. Adinolfi testified in response to questions from the plaintiffs' counsel, in part, as follows:

"Q: Did you sign a contract with, you and your husband sign a contract with your step-dad and your mom to purchase this property?

"A: With the person that was in charge of their estate, Russell, Jr.

"Q: But Russell also—

"A: And Russell, Sr., signed it also, that's correct, right, April, I believe April.

"Q: Excuse me.

"A: April of '97.

\* \* \*

"Q: And your mom had a conservator over her person in this state, is that correct, because she was aged and not capable of taking care of her affairs?

"A: Uh huh (affirmative).

Rolys, acting through Russell C. Roly, Sr., conveyed all of the land to the Adinolfis in consideration of $100,000. Russell C. Roly, Sr., received $50,000 and Eleanor Augur Roly's estate received $50,000.

Frances Lescovich, Lescovich's widow and sole beneficiary of the trust, has lived continuously on the 9.84 acres since Lescovich purchased it in 1977. Frances Lescovich learned of the Rolys' conveying the land to the Adinolfis in September, 1997. In October, 1997, the plaintiffs commenced this action, seeking to enforce the agreement. The action sought damages against Russell C. Roly, Sr., a judgment of specific performance requiring the Adinolfis to convey the land to the trust in consideration of $100,000 or, in the alternative, an order that the Adinolfis create a constructive trust of the land for the benefit of the trust.

Following the presentation of evidence, the court found that there was no bona fide offer from the Adinolfis to the Rolys that triggered the notice provision of

* * *

"Q: You said earlier that you knew there might be a right of first refusal?

"A: I had heard there might be but I did not know it to be a fact because I did not know my mother's or step-dad's legal business.

"Q: Who had you heard it from?

"A: I can't even tell you who I had heard it from, but we knew, we had heard it but did not know it to be a fact.

"Q: You mean we, you and your husband Gerald had heard that there may be?

"A: That's correct.

"Q: Did you question anybody, your attorney?

"A: The attorney knew it.

"Q: He knew what?

"A: That when we hired him I said there very well could have been. . . . When I talked to [the attorney] when he called me back when I was setting up the closing he, you know, he told me that it would take some time, because Russ, Jr., wanted to close very quickly and he said no, it's going to take some time because it has to be probated. So that's when [the attorney] called me and said, you know, we're getting there but it's going to take time, it may not be until June or July because I'm going to dot all the I's and cross all the T's, that's the exact words [the attorney] said to me."

the agreement, that the plaintiffs' interpretation of the terms of the agreement was not reasonable or realistic, that $100,000 was not equitable consideration for the real property because it was substantially less than its market value and that the plaintiffs failed to prove they did not receive notice in accordance with the agreement. This appeal followed.

I

The plaintiffs' first claim is that the court improperly concluded that the Adinolfis' offer to purchase the land for $100,000 was not a bona fide offer. In its memorandum of decision, the court found that the agreement did not contain a fixed price for the purchase of the land and set no time limits, Lescovich made no effort to buy the land during his lifetime, the appraised value of the land was in excess of $300,000, and that the plaintiffs were not ready, willing and able to pay the market price. Because Ruth A. Adinolfi had lived on the land her entire life,[7] the court inferred that the Adinolfis had provided consideration of some sort beyond the $100,000 they paid for the land, although the court cited no evidence of that consideration. The court concluded that "the plaintiffs failed to prove that the price paid by [the Adinolfis] was a bona fide offer . . . ."[8] We disagree with the court's conclusion.

---

[7] There was evidence that the Rolys gave the Adinolfis land upon which to build a house when they were married. Ruth A. Adinolfi had previously lived in the house that Lescovich purchased as an improvement on the 9.84 acres.

[8] The relevant portion of the court's memorandum of decision states: "[I]n this case before this court there is no fixed price for the purchase of the property. Nor any time limitations. The expectation of the plaintiffs to purchase this property which was worth in excess of $300,000 for the purchase price paid by a daughter of the grantors is certainly unreasonable and inequitable. The grantee of the right of first refusal at no time up to his death showed any interest in the land. Only after his death and with some other considerations not testified to is a claim to purchase the property for less than true value in excess of $300,000.

"The argument of the plaintiffs that because there is a method to determine the price being set *by a bona fide offer* satisfies this court to look favorably

"On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. . . . This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980)." (Internal quotation marks omitted.) *DeSalle* v. *Appelberg*, 60 Conn. App. 386, 389–90, 759 A.2d 537, cert. denied, 255 Conn. 908, 763 A.2d 1035 (2000). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . *State* v. *Hodge*, 248 Conn. 207, 218–24, 726 A.2d 531 [cert. denied, 528 U.S. 969, 120 S. Ct. 409, 145 L. Ed. 2d 319] (1999). . . . *State* v. *King*, [249 Conn. 645, 660, 735 A.2d 267 (1999)]." (Internal quotation marks omitted.) *State* v. *Ross*, 251 Conn. 579, 593, 742 A.2d 312 (1999).

"Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . . [T]he interpretation and construction

upon ordering specific performance at the same purchase price given to a daughter is not only unreasonable but unrealistic. This court infers that there were other considerations in determining the purchase price for her. She had lived on the property for most of her life. The plaintiffs failed to prove that the price paid by the daughter was a bona fide offer or that they were ready and willing to pay the market price." (Emphasis in original.)

of a written contract present only questions of law, within the province of the court . . . so long as the contract is unambiguous and the intent of the parties can be determined from the agreement's face." (Citation omitted; internal quotation marks omitted.) *Short* v. *Connecticut Bank & Trust Co.*, 60 Conn. App. 362, 367, 759 A.2d 129 (2000).

Here, the agreement between Lescovich and the Rolys clearly provided that the Rolys were to give personal notice to Lescovich of any bona fide offer to purchase any or all of the land. " 'A right of pre-emption is a right to buy before or ahead of others; thus, a pre-emptive right contract is an agreement containing all the essential elements of a contract, the provisions of which give to the prospective purchaser the right to buy upon specified terms, but, and this is the important point, *only if the seller decides to sell*. It does not give the pre-emptioner the power to compel an unwilling owner to sell, and therefore is distinguishable from an ordinary option. Annot., 40 A.L.R.3d 920, 924 (1971)." (Emphasis added.) *Hare* v. *McClellan*, 234 Conn. 581, 588–89, 662 A.2d 1242 (1995). The facts cited by the court that Lescovich had not shown interest in the property prior to his death and that the plaintiffs had not proven that the plaintiffs were ready, willing and able to buy the land were irrelevant to its conclusion as to whether the Rolys had received a bona fide offer. Furthermore, the agreement did not permit Lescovich to compel the Rolys to sell the land until they were willing to sell the land pursuant to a bona fide offer.

The agreement clearly states that the Rolys intended to give Lescovich "a right of first refusal" to buy the land if they received a bona fide offer. " 'Bona fide is a legal technical expression; and the law of Great Britain and this country has annexed a certain idea to it. It . . . signifies a thing done really, with a good faith, without [fraud,] or deceit, or [collusion,] or trust.' *Ware*

v. *Hylton*, 3 Dall. (U.S.) 199, 241 [1 L. Ed. 568 (1796)]. Bona fide means real, actual, genuine; *In re Herman*, 183 Cal. 153, 164, 191 Pac. 934 [1920]; real and not feigned. *Jones* v. *Light*, 86 Me. 437, 442, 30 Atl. 71 [1894]; *Hill* v. *Ahern*, 135 Mass. [158], 161 [1883]; *Coffin* v. *United States*, 162 U.S. 664, 684, 16 S. Ct. 943 [40 L. Ed. 1109 (1896)]." *Bridgeport Mortgage & Realty Corp.* v. *Whitlock*, 128 Conn. 57, 61, 20 A.2d 414 (1941).

Black's Law Dictionary defines bona fide as meaning "[i]n or with good faith; honestly, openly, and sincerely; without deceit or fraud." Black's Law Dictionary (6th Ed. 1990). Webster's provides the following definition of the Latin term: "made in good faith without fraud or deceit . . . legally valid . . . sincere . . . made with earnest or wholehearted intent . . . genuine . . . not specious or counterfeit." Webster's Third New International Dictionary.[9]

---

[9] The majority agrees with the dissent that the determination of whether something is bona fide is a question of fact for the trier. The trier is to determine good faith or absence of fraud, as the following cases illustrate.

Where the plaintiff argued that the defendants' offer to purchase real property was not made in good faith because they required a bridge loan, "[t]he trial court could reasonably reach the conclusion that when the defendant was notified that the purchasers were ready to close the deal they had immediately available the necessary funds to do so, and that they had the financial ability to perform." *Cohen* v. *Lenehan*, 134 Conn. 514, 516, 58 A.2d 707 (1948).

"The plaintiff attacked the court's finding that the minutes showing the donation of 250 shares of stock by [defendant] were written through ignorance and error, and that the correcting entry treating the transaction as a sale of stock to the corporation in return for the cancelation of indebtedness was a bona fide correction of an honest mistake." *Goldman* v. *Coppola*, 149 Conn. 317, 320, 179 A.2d 817 (1962).

"The defendants' real claim seems to be that the plaintiff did not produce a bona fide customer, but merely an intermediary who purchased the property solely for the purpose of conveying title to a customer who was not produced by the plaintiff and to whom the premises were later conveyed by [the so-called intermediary]. This was an issue of fact which the trial court decided against the defendants, upon sufficient supporting testimony. The further claim is that the plaintiff was acting merely as an agent for the buyer to secure a loan, and not for the defendants as a broker for the sale of the property." *Sullo* v. *Luysterborghs*, 129 Conn. 172, 175, 26 A.2d 784 (1942).

The case here, however, does not require a finding of whether the Adinolfis' offer was sincere or made in good faith. Clearly, the offer was genuine because the Adinolfis were ready, willing and able to purchase the land and did, in fact, purchase the land for the price they offered. See *Cohen* v. *Lenehan*, 134 Conn. 514, 516, 58 A.2d 707 (1948) ("it appears not only that the offer was made but that it was accepted, and that the defendant was notified that the cash 'was ready and waiting' for him").

The issue here is whether the Rolys were willing to sell the land to the Adinolfis for the consideration offered.[10] See *Hare* v. *McClellan*, supra, 234 Conn. 589. The Rolys' willingness to sell the land required them to inform the plaintiffs of the offer. The court failed to consider the evidence that the Rolys received a good faith offer and were willing to sell the land in the spring of 1997, e.g., the real estate contract they entered into with the Adinolfis and the petition to the Probate Court to secure permission to sell Eleanor Augur Roly's interest in the land. The contract and the petition are sufficient evidence that the Rolys considered the $100,000 offer from the Adinolfis bona fide because they took steps to sell, and in fact, sold the land for that price. See

"[T]he bona fides of a mortgage, the possible use of a mortgage to evade the usury statutes, were questions of fact and that the creditor's demurrer to a defense of usury should therefore have been overruled. Such a holding is not tantamount to a conclusion that unconscionability is to be determined, as a question of law, merely by reference to the terms of the challenged instruments." *Hamm* v. *Taylor*, 180 Conn. 491, 496, 429 A.2d 946 (1980).

"[A] plaintiff may establish a prima facie case of discrimination through inference by presenting facts [that are] sufficient to remove the most likely bona fide reasons for an employment action . . . . From a showing that an employment decision was not made for legitimate reasons, a fact finder may infer that the decision was made for illegitimate reasons." (Citation omitted; internal quotation marks omitted.) *Levy* v. *Commission on Human Rights & Opportunities*, 236 Conn. 96, 107, 671 A.2d 349 (1996).

[10] Query whether the dissent considers bona fide offer synonymous with bona fide purchaser for value.

*Cohen* v. *Lenehan*, supra, 134 Conn. 516. We conclude, therefore, that the court's finding that the Adinolfis' offer was not bona fide is clearly erroneous.

The dissent suggests that the court found that the Adinolfis gave consideration in excess of $100,000. The trier of fact may not speculate as to the additional consideration, if any, the Adinolfis had offered for the land for which there was no direct or circumstantial evidence. The court did not identify the circumstantial evidence, if any, it considered, but it inferred that there was additional consideration merely because Ruth A. Adinolfi had lived on the land her entire life. In addition to there being no direct evidence on the point, the deeds from Russell C. Roly, Sr., and from Eleanor Augur Roly's estate merely state "in consideration of fifty thousand dollars." The language "and other valuable consideration" is notably missing from the deeds, but such language is included in the preemptive agreement.[11]

We, therefore, conclude that the court was clearly erroneous in finding that the Rolys did not receive a bona fide offer to purchase the land from the Adinolfis.

## II

The plaintiffs' second claim is that the court improperly concluded that they failed to prove that the Rolys did not give them personal notice of the bona fide offer to purchase the land. We agree.

In its memorandum of decision, the court stated that "[t]he plaintiffs only called two witnesses in this case: the widow of John Lescovich, Frances Lescovich, and

---

[11] There is a strong suggestion in the dissent that because the Rolys are related to the Adinolfis, they could sell the land to them for less than market value and avoid the terms of the agreement. If the Rolys during their lifetimes had wanted to give the land to the Adinolfis or to bequeath the land to them, nothing in the agreement prevented them from doing so. If the Rolys had wanted to except an offer from the Adinolfis from the agreement, they should have negotiated that contract term with Lescovich.

David Freese, an officer of Webster Bank." On the basis of our review of the trial transcript, the plaintiffs called not only Frances Lescovich and Freese but also Ruth A. Adinolfi. " 'A committee, or other trier, is bound to consider *all* the evidence which has been admitted, as far as admissible, for all the purposes for which it was offered and claimed. Not to do so is an *error of law* no less than it would be to exclude the evidence when offered.' *State* v. *Suffield & Thompsonville Bridge Co.*, 82 Conn. 460, 465, 74 A. 775 (1909)." (Emphasis in original.) *Evans* v. *Warden*, 29 Conn. App. 274, 277, 613 A.2d 327 (1992). In reaching its conclusion that the plaintiffs failed to prove lack of notice, the court improperly failed to acknowledge Ruth A. Adinolfi's testimony and to assess the credibility of the witnesses.

The plaintiffs also claimed that the court improperly failed to admit into evidence a third party complaint filed by the Adinolfis seeking indemnification for their loss, if any, from Russell C. Roly, Jr., and their attorney. Third party complaints seeking indemnification may not be admitted into evidence as judicial admissions of liability. *DeJesus* v. *Craftsman Machinery Co.*, 16 Conn. App. 558, 566, 548 A.2d 736 (1988). The court, therefore, properly refused to admit the third party complaint into evidence.[12]

### III

The plaintiffs' third claim is that the court improperly determined that the agreement was unreasonable and unrealistic. We agree.

"Whether a preemptive option is reasonable or unreasonable is a question of law for the court. Cf. *Robert S. Weiss & Associates, Inc.* v. *Wiederlight*, 208 Conn.

---

[12] Because we resolve the plaintiffs' claim on an evidentiary basis, we need not reach the question of whether the plaintiffs had the burden to prove that they did not receive notice, a negative, or whether the defendants had the burden to prove that they provided notice.

525, 530, 546 A.2d 216 (1988) (reasonableness of covenant not to compete); *Scott* v. *General Iron & Welding Co.*, 171 Conn. 132, 137–38, 368 A.2d 111 (1976) (same). In making its determination of whether such a preemptive option is reasonable, the court must take into account the following factors: '(1) the purpose of the pre-emption, (2) its duration, and (3) the method of determining the price to be paid.' Annot., supra, 40 A.L.R.3d 926; *Metropolitan Transportation Authority* v. *Bruken Realty Corp.*, 67 N.Y.2d 156, 167–68, 492 N.E.2d 379, 501 N.Y.S.2d 306 (1986); *J L J Associates, Inc.* v. *Persiani*, 41 Conn. Sup. 79, 88, 650 A.2d 50 (1988); see generally 1 Restatement (Second), Property, Donative Transfers § 4.4 (1983). Thus, although the court's ultimate determination of the reasonableness of the preemptive option is a legal one, the court can make that legal determination only after engaging in factual determinations regarding the purpose, duration and method of setting the price for the parcel in question." *Hare* v. *McClellan*, supra, 234 Conn. 589–90.

Here, the court did not perform the factual analysis necessary to determine whether the agreement, a preemptive option, was reasonable. The court found that the agreement did not fix a price for the land and contained no time limitations. The court did note that Frances Lescovich testified, with respect to the agreement, that Lescovich was seeking additional property to expand their horse farm, but drew no conclusion as to whether that purpose was reasonable.

As to the other *Hare* reasonableness factors, the agreement directly speaks to them. Lescovich was to give to the Rolys notice of his intention to purchase the land within twelve hours of his receiving notice of the bona fide offer. "The duration of the restraint is not measured by the life of the preemptive right." (Internal quotation marks omitted.) Id., 592. "[T]he duration of a restriction is not measured by the life of the right, but

by the 'period during which the right could be exercised after the [seller] decided to sell.' " Id. The court did not address the duration factor.

Furthermore, the agreement provided that Lescovich was to provide notice "of his intention to buy any such land upon the same terms and conditions contained in any such bona fide offer to purchase . . . ." The price of the land was to be established by the bona fide offer, which terms and conditions Lescovich, or the plaintiffs, had to meet. The court did not consider that language. Because the court failed to apply the analysis adopted by *Hare*, its conclusion that the agreement was unreasonable is clearly erroneous.

For the foregoing reasons, the judgment is reversed and the case is remanded for further proceedings in accordance with law.

In this opinion MIHALAKOS, J., concurred.

HENNESSY, J., dissenting. I respectfully disagree with the majority and would affirm the judgment of the trial court. I believe that the majority, in part I of its opinion, incorrectly concluded that the offer by the defendants Ruth A. Adinolfi and Gerald S. Adinolfi[1] to purchase the land was a bona fide offer. Additionally, I believe that the dispositive issue of the appeal is whether the Adinolfis' $100,000 offer was a bona fide offer, not whether the Adinolfis were "ready, willing and able to purchase the land" as the majority suggests. The majority's conclusion that the offer was genuine because the Adinolfis were "ready, willing and able" to buy the property is unsupported by case law. This court has often referred to a party's readiness and willingness to purchase land in specific performance cases. Those cases, however, do not stand for the proposition that a party's offer is *bona fide* if a party is ready, willing

---

[1] See footnote 2 of the majority opinion.

and able to purchase land by that offer. As stated previously, to create case law that supports that conclusion would be to usurp the trial court's right to determine the bona fides of an offer or other issue. The fact that a party is "ready, willing and able" to purchase land may lend support to proving that the party is a bona fide *purchaser*. It does not, however, prove that an *offer* made by that individual is a bona fide offer. The majority has improperly substituted the test for bona fide purchaser as the test for bona fide offer.

The majority improperly focuses its analysis on whether the Adinolfis were bona fide purchasers.[2] The trial court's determination that the Adinolfis' $100,000 offer was not bona fide is a finding of fact. Thus, as the majority states, and I agree, the proper standard of review is whether the court's findings are clearly erroneous.

Although the majority's conclusion about the bona fides of the offer does reach the result the majority seeks to reach, namely to find that the offer in this case does trigger the right of first refusal, the majority fails to see the wider ramifications of such a holding. By its approach, the majority states that any offer that is accepted is, ipso facto, a bona fide offer. That would write out of existence the preface bona fide as used with respect to offers in areas of the law too numerous to recount here.

Additionally, the majority's opinion would rewrite, sub silentio, our Supreme court's long-standing rule that the question of the bona fides of anything is a question of fact for the trier of fact. See *Levy* v. *Commission*

---

[2] The majority states: "The case here, however, does not require a finding of whether the Adinolfis' offer was sincere or made in good faith. Clearly, the offer was genuine because the Adinolfis were ready, willing and able to purchase the land and did, in fact, purchase the land for the price they offered."

*on Human Rights & Opportunities*, 236 Conn. 96, 107, 671 A.2d 349 (1996); *Hamm* v. *Taylor*, 180 Conn. 491, 496, 429 A.2d 946 (1980); *Goldman* v. *Coppola*, 149 Conn. 317, 320, 179 A.2d 817 (1962); *Cohen* v. *Lenehan*, 134 Conn. 514, 516, 58 A.2d 707 (1948); *Sullo* v. *Luysterborghs*, 129 Conn. 172, 175, 26 A.2d 784 (1942); cf. *Rice* v. *Rice*, 134 Conn. 440, 445, 58 A.2d 523 (1948), aff'd, 336 U.S. 674, 69 S. Ct. 751, 93 L. Ed. 957 (1949). It is the policy of this court that we do not create conflict with prior holdings of our Supreme Court. The majority opinion in this case would abrogate more than one-half century of Supreme Court precedent on a matter of first impression before this court.

The majority opinion states that "[t]he court did not identify the circumstantial evidence, if any, it considered" when concluding that the sale was not the result of a bona fide offer. The facts show otherwise. The court listed the other factors it considered, the most compelling factor being that the daughter of the sellers had lived on the land all of her life prior to purchasing it. Other factors that led the court to find that the sale was not the result of a bona fide offer were that "[t]he plaintiffs failed to prove that the price paid by the daughter was a bona fide offer or that they were ready and willing to pay the market price." "We do not duplicate the role of the trial court in weighing the evidence, but determine only whether the trial court's conclusion was reasonable. In the absence of clear error [we] should not overrule the thoughtful decision of the trial court, which has had an opportunity to assess the legal issues which may be raised and to weigh the credibility of . . . the witnesses." (Internal quotation marks omitted.) *Lapuk* v. *Simons*, 41 Conn. App. 750, 677 A.2d 24, cert. denied, 239 Conn. 926, 683 A.2d 21 (1996).

I believe that the trial court reasonably could have found that the sale of property for substantially less than its fair market value to the seller's daughter and

son-in-law, the natural objects of his bounty, was not the result of a bona fide offer. "Our role as an appellate court is not to substitute our judgment for that of a trial court that has chosen one of many reasonable alternatives." (Internal quotation marks omitted.) *State* v. *Day*, 233 Conn. 813, 842, 661 A.2d 539 (1995). The trial court listed the factors it took into account when making its finding. As such, the finding of the court is not clearly erroneous and the judgment of the court must be affirmed.[3]

Moreover, the contract granting John Lescovich the right of first refusal was constructed in such a manner that would allow a transfer of the property without triggering the right. The contract states in relevant part: "This agreement shall continue in force during the life of the Grantee and for twenty-one (21) years thereafter, and is binding on the heirs, successor[s] and assigns of the parties hereto." By including that phrase, the drafter did not restrict the grantee, now seller, from conveying the property without activating the right of first refusal. By binding the "heirs, successor[s] and assigns of the parties," the drafter protected the holder of the right of first refusal while still allowing a conveyance of the land in a manner that does not activate the right. This court has held that "[w]here the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." (Internal quotation marks omitted.) *Sachs* v. *Sachs*, 60 Conn. App. 337, 343, 759 A.2d 510 (2000). This court "will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . ." (Internal quotation marks omitted.) Id.

"It is the general rule that a contract is to be interpreted according to the intent expressed in its language

---

[3] See *Mucci* v. *Brockton Bocce Club, Inc.*, 19 Mass. App. 155, 158, 472 N.E.2d 966, review denied, 394 Mass. 1102 (1985), wherein the Massachusetts Appeals Court held that the question of whether an act is bona fide for purposes of a right of first refusal to purchase property is one of fact, and the party alleging its absence ordinarily has the burden of proof.

and not by an intent the court may believe existed in the minds of the parties." (Internal quotation marks omitted.) *John M. Glover Agency* v. *RDB Building, LLC*, 60 Conn. App. 640, 644, 760 A.2d 980 (2000). In particular, this court endeavors to give effect to all the terms of a contract. The majority's conclusion that any sale would activate the right would fail to give effect to the provision of the contract that kept it in force during the life of the grantee and for twenty-one years thereafter.[4]

At the end of part I, the majority states that "[t]he contract and petition are sufficient evidence that the [defendants Russell C. Roly, Sr., and his wife, Eleanor Augur Roly] considered the $100,000 offer from the Adinolfis bona fide because they took steps to sell, and in fact, sold the land for that price." I would submit that this conclusory statement is unsupported by case law and does not prove that the court's finding was clearly erroneous. Consequently, the trial court reasonably could have found that the sale did not trigger the right of first refusal.

## II

Part II of the majority opinion deals with the notice requirement of the right of first refusal. I would agree with the majority that if the right of first refusal had been triggered, and the plaintiff did not receive notice in accordance with the terms of the right, then the sale to the Adinolfis would have been improper. See *Briggs* v. *Sylvestri*, 49 Conn. App. 297, 304, 714 A.2d 56 (1998). I can not, however, adopt the reasoning in part II in that it fails to (1) explain what part of Ruth A. Adinolfi's testimony contradicts the trial court's findings or (2)

---

[4] I note that although the sale did not activate the right, the right of first refusal remains in full force and effect, and continues to bind the Adinolfis for the remainder of the twenty-one year period recited in the agreement. Specifically, if the Adinolfis offer the property for sale and receive a bona fide offer to purchase the property within the remainder of the twenty-one year period, they would be bound to honor the plaintiffs' right of first refusal.

articulate the reasons why it finds that the trial court's findings were in error.

Further, I agree with the majority that a trier of fact must consider *all* of the evidence before it. I note, however, that the court in this case has done just that. Additionally, "[t]his court has proclaimed repeatedly that it is not within our province to retry facts. . . . A factual ruling of a trial court will not be disturbed unless it is clearly erroneous." (Internal quotation marks omitted.) Id., 305. Thus, I believe the ruling of the trial court should be affirmed.[5]

I would affirm the judgment of the trial court.

_____

[5] I also agree with the majority that the court properly refused to admit the third party complaint into evidence.