[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
The plaintiff brought this action on December 16, 1997. On December 8, 1999, she filed an amended complaint, in five counts, alleging breach of express contract (count one); breach of the implied covenant of good faith and fair dealing (count two); breach of implied contract (count three); emotional distress based on breach of contact (count four) and negligent infliction of emotional distress.
The plaintiff, Mary Ann Gardner, was hired on August 22, 1996, under a written contact, to teach for the defendant St. Paul Catholic High School, from August 22, 1996 through June 30, 1997. In a letter dated June 19, 1997, Sister Joan A. O'Connor, the principal, informed Gardner that her position was being eliminated, and, therefore, that the school would not be offering her a contract for the following year. (Defendant's Memorandum, Exhibit C).
The defendant filed a motion seeking summary judgment on all five counts on September 15, 2000.
The defendant argues that it is entitled to summary judgment on all of the contact claims, counts one, two, three and four, because the appeals mechanism set forth in the contract between the plaintiff and the defendant provided the plaintiff's exclusive remedy.
Further, as to count two, the defendant argues that because it fired CT Page 15324 the plaintiff for sufficient cause, it did not breach the implied covenant of good faith and fair dealing.
Third, the defendant moves for summary judgment on count three, claiming that the existence of an express contract precludes the plaintiff from bringing a cause of action based on implied contract.
Fourth, the defendant seeks summary judgment on count four, arguing that there is no recovery for emotional distress based on contract.
Lastly, the defendant seeks summary judgment on count five, arguing that the plaintiff has failed to satisfy the showing for negligent infliction of emotional distress.
"In any action . . . any party may move for a summary judgment at any time. . . ." Practice Book § 17-44. "[S]ummary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Miles v. Foley, 253 Conn. 381, 385,752 A.2d 503 (2000). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) Id., 386. "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citation omitted; internal quotation marks omitted.) Id.
A. EXCLUSIVE REMEDY
The defendant argues that the teacher's initial contract (initial contract) and the collective bargaining agreement between the school office of the Archdiocese of Hartford and the Greater Hartford Catholic Education Association (collective bargaining agreement) together preclude the plaintiff from bringing a civil action. On this ground, the defendant moves for summary judgment on counts one, two, three and four.
"Parties to a contract may agree on the remedies available in the event of a breach of contract. If the language of the agreement discloses that the pates intended to limit the remedies to those stated, the agreement will be enforced and the party will be limited to the exclusive remedies outlined in the agreement. . . . A contract will not be construed to limit remedial rights unless there is a clear intention that the enumerated remedies are exclusive. . . ." (Citations omitted; internal CT Page 15325 quotation marks omitted.) International Marine Holdings, Inc. v. Stauff,44 Conn. App. 664, 676, 691 A.2d 1117 (1997); see also Shawmut BankConnecticut, N.A. v. Connecticut Limousine Service, Inc.,40 Conn. App. 268, 277, 670 A.2d 880, cert. denied, 236 Conn. 915,673 A.2d 1143 (1996).
There is no language in either the initial contract or the collective bargaining agreement that expresses a clear intention that the enumerated remedies are meant to exclude the possibility of a civil lawsuit. In Article VI, the collective bargaining agreement incorporates by reference the individual, initial contracts. Section B (1)(b) of Article VI provides that "[d]uring the period of a Teacher's Initial Contract, his employment shall be probationary and the Principal shall have the right to terminate such employment for sufficient reason at anytime, which reasons shall be stated in writing to the teacher, if so requested by the teacher. The teacher, however, shall have the right to appeal his dismissal or the non-renewal of his contract to the Superintendent as provided in the Teacher's Initial Contract and shall be permitted representation by an Association member designated by the Association if the teacher so requests." (Defendant's Memorandum, Exhibit A, p. 13.)
The initial contract provides that "[t]his contract shall be renewed annually during the period of said teacher's probationary employment, unless the teacher has been notified in writing prior to March first in one school year that the contract will not be renewed for the following school year. . . . This contract may be terminated by mutual consent at any time. It may be terminated by the School, acting through the Principal, for sufficient reason at any time. The teacher shall have the right to appeal such dismissal or the non-renewal of his contract to the Archdiocesan Superintendent of Schools ("Superintendent") by filing a written notice of appeal with the Superintendent within fifteen (15) days after notification of such dismissal or non-renewal is given to the teacher. . . . The decision of the Superintendent shall be final and shall not be subject to the grievance procedure of the Agreement between the School Office and the Association or to other appeal." (Emphasis added.) (Complaint, Exhibit A, p. 1.)
The defendant relies on the phrase "or to other appeal" in arguing that the plaintiff's contract precluded her from bringing a civil action. The defendant does not make clear, however, how exactly the plaintiff's institution of a civil action constitutes an appeal. Black's Law Dictionary defines appeal" as "[the] [resort to a superior (i.e. appellate) court to review the decision of an inferior (i.e. trial court) or administrative agency." Black's Law Dictionary (6th Ed. 1990).
This is not an action to review either the decision of a lower court, CT Page 15326 or the decision of an administrative agency.
Therefore, the defendant's motion for summary judgment on counts one, two, three and four on this ground is denied.
B. BREACH OF EXPRESS CONTRACT
Both parties agree that because the defendant acted after March first, the defendant terminated the plaintiff's employment and did not merely decline to renew her contract for the following year. Because the defendant terminated the plaintiff's employment, the plaintiff's initial contract requires that the termination be for "sufficient reason." The defendant moves for summary judgment on count one on the ground that it did not breach the express contract between it and the plaintiff because it terminated the plaintiff for sufficient reason. The plaintiff argues that the defendant's reason does not constitute sufficient reason because 1) the proffered reason, the elimination of the plaintiff's position, is a contrived one; and 2) even if the proffered reason were the true reason for the plaintiff's position, elimination of a position does not constitute sufficient cause.
The Supreme Court has defined sufficient cause as "equivalent to good cause. . . . Good cause includes any ground which is put forward by the [school] committee in good faith and which is not arbitrary, irrational, unreasonable, or irrelevant to the committee's task of building up and maintaining an efficient school system." (Citation omitted; emphasis added; internal quotation marks omitted.) Rado v. Board of Education,216 Conn. 541, 554, 583 A.2d 102 (1990); see also Hanes v. Board ofEducation, 65 Conn. App. 224, 232, ___ A.2d ___ (2001). "[T]he decision to terminate must be reached after a careful examination of all pertinent factors relating to the particular situation, with due consideration of the effect the teacher's conduct will have on the school authorities as well as on the students." (Internal quotation marks omitted.) Rado v.Board of Education, supra, 216 Conn. 554.[1] Therefore, if the defendant acted in bad faith and the proferred reason for termination was contrived, the defendant has not satisfied the sufficient reason requirement. The plaintiff has called the good faith of the defendant into question in her memorandum in opposition to summary judgment. The plaintiff claims that the true reason for the plaintiff's termination was an inappropriate letter that was stolen from her daughter's book bag.[2]
The existence of bad faith is a question of fact. See Habetz v. Condon,224 Conn. 231, 237 n. 11, 618 A.2d 501 (1992).
Even if the defendant did not act in bad faith, there remains a material issue of fact as to whether its actions constituted the elimination of a position. The defendant claims that the class schedules CT Page 15327 for the 1997-98 school year were created sometime in late spring of 1997. In June of 1997, O'Connor determined the there was a need to create new sections in english, physical education and health. (Deposition of Sister Joan O'Connor, November 18, 1998, p. 79.) Based on the addition of those new courses, the defendant claims, three new full-time positions, each contained in a separate department, were created, while the position of the plaintiff; teaching courses in both health and english, was eliminated.
The plaintiff argues that her position was not eliminated. Instead, she claims that the defendant's actions amount to a mere change in teaching assignments. In support of this proposition, she attaches the deposition testimony of Rene Morache, who began teaching at St. Paul's in 1983. According to Morache, the defendant routinely changes the course loads of teachers, or their assignments, but has never termed such a change the elimination of a position and asked the teacher to reapply for newly posted positions. Instead, the teacher retained her position, but merely had been reassigned to different courses. In some cases, the teachers' assignments were changed "dramatically," yet their positions were never in jeopardy. (Deposition of Rene Morache, August 16, 2000, Defendant's Memorandum, Exhibit B, p. 17.) Based on the plaintiff's supporting documentation, the court holds that a material issue of fact remains as to whether the defendant's actions constituted an elimination of a position or merely a change in teaching assignment.
Since the plaintiff has satisfied her burden of providing an evidentiary foundation for her claim that the defendant acted in bad faith, the defendant's motion for summary judgment on count one is denied.
C. BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
The defendant moves for summary judgment on count two, arguing that because it terminated the plaintiff for sufficient cause, there was no breach of the implied covenant of good faith and fair dealing. The implied covenant of good faith and fair dealing is a "rule of construction designed to fulfill the reasonable expectations of the contracting pates as they presumably intended. The principle, therefore, cannot be applied to achieve a result contrary to the clearly expressed terms of a contract, unless, possibly, those terms are contrary to public policy." Magnan v. Anaconda Industries, Inc., 193 Conn. 558, 567,479 A.2d 781 (1984); see also Carbone v. Atlantic Richfield Co.,204 Conn. 460, 470, 528 A.2d 1137 (1987). Both Magnan and Carbone
involved the termination of employees at will.
In the case of an at will employee, an employer may terminate the CT Page 15328 employee for good reason, bad reason or no reason at all, so the existence of bad faith on the part of the employer, in the absence of a violation of public policy, is irrelevant. See Magnan v. AnacondaIndustries, Inc., supra, 193 Conn. 566-72. In this case, however, the plaintiff had a reasonable expectation that she would be terminated only for sufficient reason, which requires that the employer have acted in good faith. See Rado v. Board of Education, supra, 216 Conn. 554.
Since the court has already determined that there exist issues of material fact as to whether the defendant acted in good faith in terminating the plaintiff, the motion for summary judgment on count two is denied.
D. IMPLIED CONTRACT
The defendant moves for summary judgment on count three, arguing that there can be no implied contract where there is an express contract. The plaintiff alleges in the complaint that the defendant made various oral representations, upon which the plaintiff relied, which "constitute an implied contract of employment with the plaintiff that she would be employed continuously from year to year unless terminated for "sufficient reason' and/or just cause." (Complaint, Count Three, ¶ 17.) Essentially, the plaintiff suggests that these oral representations constitute an implied contract separate from, but not inconsistent with, the express, written contract. Therefore, the plaintiff argues, the oral representations supplement the written agreement. The plaintiff's claim, that the implied contract guarantees her continuous employment from year to year absent a showing of sufficient reason for termination by the school, however, conflicts with the language in the initial contract, which provides that the school has the option of notifying her prior to March first of its decision not to renew the contract. There is no requirement in either the initial contract or the collective bargaining agreement that such a decision be justified by sufficient reason. Moreover, the collective bargaining agreement contains both a merger clause and a clause prohibiting subsequent oral modifications.[3]
"The parol evidence rule prohibits the use of extrinsic evidence to vary or contradict the terms of an integrated written contract. . . . The parol evidence rule does not apply, however, if the written contract is not completely integrated. . . . As a threshold matter, therefore, a trial court must determine whether the written contract is a complete integration for purposes of the parol evidence rule." (Citations omitted; internal quotation marks omitted.) Benvenuti Oil Co. v. FossConsultants, Inc., 64 Conn. App. 723, 727-28, ___ A.2d ___ (2001).
Generally, the question of whether a contract is integrated is a CT Page 15329 question of fact. Where a contract contains a merger clause, however, the issue becomes a question of law, unless there was unequal bargaining power between the parties. Id., 728. "[W]hen the parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed, that the whole engagement of the parties, and the extent and manner of their understanding, was reduced to writing. . . . Although there are exceptions to this rule,[4] we continue to adhere to the general principle that the unambiguous terms of a written contract containing a merger clause may not be varied or contradicted by extrinsic evidence." (Citation omitted, internal quotation marks omitted.) Tallmadge Bros., Inc. v. Iroquois GasTransmission System, L.P., 252 Conn. 479, 502-03, 746 A.2d 1277 (2000); see also Giorgio v. Nukem, Inc., 31 Conn. App. 169, 171, 624 A.2d 896
(1993) (affirming trial court's holding that written employment contract was integrated agreement). In this case, the unambiguous merger clause was the product of the contract between the Archdiocese of Hartford and the teacher's union, so there is no question of unequal bargaining power between the parties. Thus, the merger clause bars alteration of the contract by any prior or contemporaneous oral representations. TallmadgeBros., Inc. v. Iroquois Gas Transmission System, L.P., supra,252 Conn. 502.
Further, the clause in the collective bargaining agreement barring the subsequent oral modification of the written contract is unambiguous. "Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the pates intended by their contractual commitments is a question of law. . . . [T]he interpretation and construction of a written contract present only questions of law, within the province of the court . . . so long as the contract is unambiguous and the intent of the pates can be determined from the agreement's face." (Citation omitted; internal quotation marks omitted.) Webster Trust v. Roly,64 Conn. App. 233, 239-40, 780 A.2d 142 (2001).
In this case, because the clause in the collective bargaining agreement prohibiting subsequent oral modifications of the written contract is unambiguous, its interpretation is a question of law.
Therefore, the written agreement between the parties constituted the complete agreement as to the issue of termination, not modified by any prior or contemporaneous oral representations by the defendant, and that agreement was not subject to subsequent oral modification by any implied contracts. CT Page 15330
The defendant's motion for summary judgment on count three is granted.
E. EMOTIONAL DISTRESS RESULTING FROM BREACH OF CONTRACT
The defendant argues that there is no recovery for emotional distress damages for breach of contract. The court agrees. "[M]ere breach of contract does not warrant recovery of either punitive or mental distress damages." Dowling v. First Federal Bank, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 533172 (June 30, 1995, Corradino, J.) (granting the defendants' motion to strike the plaintiff's claim, which sought to recover damages for emotional distress resulting from breach of contract); see also Smith v. Bridgeport FuturesInitiative, Inc., Superior Court, judicial district of Fairfield, Docket No. 326697 (August 13, 1996, Levin, J.) ("Mental suffering caused by breach of contract, although it may be a real injury, is not generally allowed as a basis for compensation in contractual actions.")
While the same conduct that forms the basis of an action for breach of contract may form the basis for a claim for negligent infliction of emotional distress, "the breach of contract for such a claim as such is inappropriate." Dowling v. First Federal Bank, supra, Superior Court, Docket No. 533172.
Therefore, the defendant's motion for summary judgment on count four is granted.
F. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
The defendant argues that the plaintiff does not meet the required showing for negligent infliction of emotional distress. In order to state a claim for negligent infliction of emotional distress, "the plaintiff has the burden of pleading that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm." (Internal quotation marks omitted.) Parsons v. United TechnologiesCorp., 243 Conn. 66, 88, 700 A.2d 655 (1997). "[N]egligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct of the defendant in the termination process." (Internal quotation marks omitted.) Id. "The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress. The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." (Internal quotation marks omitted.) Id., 88-89.
The plaintiff alleges in her complaint that the conduct of the CT Page 15331 defendant in terminating the plaintiff was "unreasonable, inconsiderate, humiliating and embarrassing." (Complaint, Count Five, ¶ 26.) Specifically, the plaintiff alleges that she reported to O'Connor's office on June 20, 1997 for the purpose of signing her contract for the upcoming year in response to a posted notice for her to do so. At that time, other teachers were waiting outside the office to sign their contracts for the coming year. After O'Connor informed the plaintiff that she was terminated, the plaintiff left the office and walked by the waiting teachers in tears. Relying on Pavliscak v. Bridgeport Hospital,48 Conn. App. 580, 711 A.2d 747, cert. denied, 245 Conn. 911, 718 A.2d 17
(1998), the defendant argues that the lack of advance warning or written notification is insufficient to establish that the employer's conduct was unreasonable. The court in Pavliscak, however, specifically relies on its determination that the plaintiff was an at will employee in holding that the lack of advance warning was irrelevant to the reasonableness of the defendant's conduct. Id., 598. Therefore, its conclusion that the defendant's conduct was reasonable does not aid the court in this case, where the plaintiff was not an at will employee.
Viewing the evidence in the light most favorable to the nonmoving party, the court concludes that there remain issues of material fact as to whether the conduct of the defendant in the termination process was unreasonable.
Therefore, the defendant's motion for summary judgment on count five is denied.
Because of the foregoing reasons, the defendant's motion for summary judgment on counts three and four is granted. The defendant's motion for summary judgment on counts one, two and five is denied.
By the Court,
Joseph W. Doherty, Judge